THOMAS, Justice.
The petitioner complains because he was not declared permanently and totally disabled but instead was found to have suffered injury rendering him permanently partially disabled to the extent of 65% of the body as a whole.
At the time of his injury the petitioner was 51 years of age, totally illiterate — his intelligence quotient is 60 and according to *44 the clinical psychologist who testified he is by the “old nomenclature * * * feeble-minded, and [in] the new nomenclature * * * mentally retarded, moderate to severe in degree.” We learn that the claimant has a mild case of diabetes mellitus and a significant degree of hypertension. His counsel frankly states in his brief that these are not traceable to the injury but that they do when combined with the results of the injury, namely, a protruded lumbar disc, nerve root pressure, partial sciatic palsy, complete paralysis of the peroneal and toe extensor muscles of the foot, left toe drop, atrophy and continued pain constitute obstacles to his employment.
All his life the claimant had worked as a farm hand, porter, car washer, and performed other unskilled manual jobs. He had had ailments on several occasions which did not leave him with any residual disability, At the time of the injury for which he now seeks relief he was a laborer for the city of Tampa earning $56.46 weekly.
At first the city afforded medical treatment and paid temporary total compensation then filed notice to controvert.
The deputy commissioner entered an order that the claimant be furnished a myelo-gram to determine whether or not he had a herniated intervertebral disc. After this procedure the deputy' found that as a result of the injury the claimant had a protruded lumbar disc causing him to be temporarily and totally disabled from 19 May 1962 to 14 February 1963 and that he was entitled to temporary total compensation during that period and until the condition ceased. Furthermore, he found that the claimant had not yet reached maximum medical recovery and was still, at the time of hearing, in need of further medical treatment.
Complying with the order effectuating these findings the city furnished the medical treatment until 5 September 1963 when the claimant'declined surgery. At that time he wás given a disability rating of 40% permanent partial disability of the body as a whole. The claimant in cooperation with Florida State Employment Service, Vocational Rehabilitation Service, the Rehabilitation nurse of the Florida Industrial Commission and certain employment agencies undertook to find employment but failed, except for a few days’ work in mopping floors and cleaning pots at a golf and country club, which he had to discontinue because of his condition. For a period of 35 weeks he was able only sporadically to wash and wax automobiles.
For the third, and final, time the matter was entertained by the deputy who awarded him compensation on the basis of 65% permanent partial disability of the body as a whole.
The Full Commission subsequently affirmed this order and it is this affirmance that is now under attack.
We have recognized the rule that a laborer need not be completely immobilized or utterly incapacitated to be classified as permanently and totally disabled. Port Everglades Terminal Co. v. Canty, Fla., 120 So.2d 596. And he will not be removed from that status by infrequent odd jobs or by uncertain work prompted by family influence or resulting from gratuitousness. Despite any of these, this court indicated one may be unfit for remunerative or competitive employment in any “ 'general field of human endeavor.’ ”
In the cited case we approved the language in Unora v. Glen Alden Coal Co., 377 Pa. 7, 104 A.2d 104, which is peculiarly pertinent to the present case: “Where the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant-employer to show that such a job is in fact within reach. If proof of that fact is not presented, the claimant then is entitled to a finding of total disability.” (Italics supplied.)
*45 - We think the language we have italicized is most significant in this case as will be demonstrated by excerpts of the record we will now 'examine. At the outset of the second hearing, 2 December 1963, the attorney for the city in reply to an inquiry of the deputy about the attorney’s “position” in the matter stated to the deputy that the claimant, it'was felt, was not totally disabled and that “the City of Tampa [had] * * * a job for him, and [was] * * * ready, willing and able to rehire him at an even higher salary.” Later in reply to a question by the city attorney, the claimant swore that he “axed” the head of the park department, Mr. Massey, about work and was told that he, Mr. Massey, would “try to open a place” for claimant.
At this same hearing the Personnel Director of the City of Tampa testified that there- was a job claimant could do and that he had talked to claimant frequently and with Mr. Massey who told him he would be “able to help him [claimant] in a position at any time he was able to go back to work.” He said the city had a place in its small nursery for someone to spray and water and such a job was available to the claimant.
There seems to have been considerable conversation on the subject of providing employment by the city-respondent but nothing was done about it and actually the promise of a job influenced the deputy for he stated in his order that he had considered “the possibility that the City of Tampa may be able to create a special light j ob for him as a nurseryman which he could perform at his own pace.” This is immediately followed by the finding that the claimant had “suffered a permanent and partial impairment of his wage-earning capacity to the extent of * * * sixty-five per cent (65%) of the body as a whole * *
Judging the situation by the comment we have quoted from Unora v. Glen Alden Coal Co., supra, it was the burden of the city to prove that a job claimant could perform was available. The record does not reveal that- the burden was met,
 We do not propose to' veer from the course we set in United States Casualty Co. v. Maryland Casualty Co., Fla., 55 So. 2d 741, and Scott v. Kerr, Fla., 156 So.2d 847, and have 'since meticulously followed, in respect of the weight to be given the findings of fact by a deputy commissioner. We said, and we repeat, that such findings should not be disturbed unless it appears that they are not sustained by competent, substantial evidence. Whether or not we would have come to the same conclusion on the record is beside the point. We will make an excursion into the record only to determine if sufficient evidence is present which, the deputy believing, supported his conclusion even though this court might have embraced a contrary version of it.
 We decide in this case that' there was abundant competent substantial evidence that the claimant sustained disability to the extent of 65 per cent., therefore, on that score we do not disturb the order. But we are convinced that there was ample- evidence to justify, indeed to require, that the deputy proceed beyond that point to'.declare total permanent disability, or 100 per cent, taking into account the tolerance the courts, including this one, recognize that a person need not be entirely out of commission to be awarded compensation for total permanent disability.
The order of the Full Commission is quashed with directions to have the deputy enter an order accordingly.
DREW, C. J., and ROBERTS, THOR-NAL and O’CONNELL, JJ., concur.