412 So.2d 884 (1982)
Emily WRIGHT, Appellant,
v.
GOLF DRIVE RESIDENCE, INC., and Insurance Company of North America, Appellees.
No. VV-149, XX-290.
District Court of Appeal of Florida, First District.
March 18, 1982.
Rehearing Denied April 30, 1982.
*886 L. Barry Keyfetz, Keyfetz & Poses, Miami, for appellant.
Gerald W. Pierce, Henderson, Franklin, Starnes & Holt, Fort Myers, for appellees.
LARRY G. SMITH, Judge.
Appellant, claimant in a workers' compensation proceeding, asserts that several errors were made in the deputy commissioner's order awarding compensation. She challenges the provisions of the order: (1) requiring her to travel from her home in Naples to Fort Myers for further treatment; (2) finding that her disability is restricted to her 50% body as a whole anatomical rating, with no award for wage earning capacity loss; (3) finding that she is in need of psychiatric treatment, but failing to order the employer/carrier to provide it; and (4) allowing the employer/carrier a set-off for previous permanent partial disability and social security benefits paid without determining the manner and method by which this should be done. We agree reversible error has been shown.
Claimant is a 39-year old woman with a twelfth grade education who has worked as a nurse's aide during her adult life. In 1973, she injured her back, underwent surgery, and was later discharged with a 10% permanent partial disability of the body as a whole for which she was paid settlement benefits. Subsequent to this injury, she was able to continue her work, although she did suffer back pain. She injured her back again in April, 1978, while working for the appellee-employer when she slipped and fell while pulling a patient out of a tub.
Claimant now suffers severe headaches in the back of the head, pain in both buttocks, her kneecap and shoulders, and pressure in her back. Medical treatment has been limited to bed rest and flexiril, claimant being unable to take any more medication than this due to gastrointestinal troubles. She suffers severe depression because of her pain. At the hearing she indicated a willingness to work if she could get relief from her pain. Her treating physician, Dr. Hussey, ruled out surgery as useless and has given her a 50% anatomical impairment rating of the body as a whole.
Dr. Hussey has restricted claimant from lifting, bending or stooping. He initially felt claimant was totally disabled since she is unable to do any laboring type of job, but later testified that claimant might be able to do some part-time work, but not a "standard job." He elaborated that claimant needed a job where she could work for three hours and then rest for three hours, or at least lie down for a half an hour. He ruled out such jobs as a receptionist or medical records file clerk as too demanding for claimant's physical capabilities. He described claimant' injury as one which aggravated a pre-existing weak spot in her back, but he was unable to apportion claimant's present disability,[1] noting that claimant was previously clinically asymptomatic. When asked to assume that the claimant had a 10% impairment rating from her earlier compensable accident, the doctor stated that he would say there was a "40% add on" from the new accident. However, he also testified that he did not know how the earlier 10% had been arrived at, and assuming the further facts that she could return to work and was asymptomatic and without pain, 10% was more than adequate, or may have been actually high. He also stated that "[I]f she were asymptomatic and working, I don't think I would have given her a 10% rating before."
The E/C deauthorized Dr. Hussey on September 1, 1979, and authorized two doctors in the Fort Myers area. The claimant took the position below that authorizing medical treatment in Fort Myers was improper, since she resides in Naples, contending that to require medical care and treatment in the Fort Myers area would impose a hardship upon her. She testified that she would have to use a taxi, and the trip would take about an hour. Dr. Hussey testified there *887 would be nothing wrong with sending claimant to Fort Myers for further opinions and evaluations; however, he felt it was appropriate medically for her to be treated in the Naples area because with pain problems of claimant's type, traveling in a car for any distance only aggravates the problem.
Because claimant suffered such severe depression and anxiety as a result of her injury, Dr. Hussey felt a psychological component was involved and he sent claimant to see Dr. Love, a clinical psychologist. Dr. Love felt that claimant's psychological condition had deteriorated as a result of the depression she suffered from her unremitting pain. He related this psychogenic problem to claimant's accident within a reasonable degree of medical probability. With respect to employment, he felt jobs might exist that claimant would be physically capable of doing; but until her depression is brought under control, she would be unable to perform them. It was his view that claimant is not a candidate for individual psychotherapy but might benefit from treatment at a pain clinic. He felt nothing much could be done for claimant on an out-patient basis because of the depth of her depression. Claimant is unable to take antidepressive drugs because of her stomach problems. Both doctors felt there was absolutely no evidence that claimant is malingering.
The E/C paid temporary disability benefits from the date of the accident to January 11, 1980, and the parties stipulated claimant reached MMI on January 30, 1980. At the hearing claimant sought permanent total disability benefits from the date of MMI or, in the alternative, permanent partial disability benefits.
After a hearing, the deputy commissioner found that claimant is in need of further psychiatric treatment, although he expressed doubts that there was evidence claimant would experience any profound improvement in her physical or psychiatric condition. At the same time, he ordered further remedial and/or palliative orthopedic treatment for claimant by the authorized physicians in the Fort Myers area. Since no psychiatric disability had been given and no opinion rendered as to temporary disability on a psychiatric basis, the deputy concluded there was no related disability on that basis. He accepted Dr. Hussey's 50% rating and the stipulated MMI date. Because the claimant had made no job search, however, he declined to award benefits based on loss of wage earning capacity, limiting her to 50% anatomical disability of the body as a whole. He ordered the bills of Dr. Hussey to be paid up to July 31, 1979 together with interest and penalties. Finally, he ordered the E/C to pay benefits equal to 50% permanent partial disability of the body as a whole with an appropriate set-off for the previous (1973) settlement, social security benefits as may be appropriate, and any permanent partial disability paid since the stipulated date of MMI.
In City of Jacksonville Fire Division v. McDaniel, 388 So.2d 1336 (Fla. 1st DCA 1980), we reversed an award of permanent partial disability benefits as premature, since the deputy simultaneously found claimant to be in need of further psychiatric care. The facts of this case are quite similar, in that the deputy found that the claimant is in need of psychiatric (as well as orthopedic) care, and the evidence is not conclusive that claimant cannot respond to further psychiatric treatment. We recognize that the deputy here felt constrained to award permanent disability benefits based on claimant's orthopedic disabilities only, since no disability rating was given by the doctors based on permanent psychiatric impairment, and because the parties had stipulated to January 30, 1980, as the date of maximum medical improvement. Joint stipulations of the parties are normally binding on the deputy, and ordinarily a finding by the deputy at variance with a stipulation will be overturned. Principe v. Mount Sinai Hospital, 156 So.2d 385 (Fla. 1963). However, a deputy should not bind himself to a stipulation if the facts are at variance with, and show good cause for modification of the stipulation. Woods v. Greater Naples Care Center, 406 So.2d 1172, *888 at 1173 (Fla.App.); Delta Drilling Company, Inc. v. Wells, IRC Order 2-3708 (1979), cert. den. 379 So.2d 204 (Fla. 1979). Further, it is the obligation of the deputy commissioner, as the trier of fact, to determine the date of maximum medical improvement. Corral v. McCrory Corp., 228 So.2d 900 (Fla. 1969).
This case presents somewhat of a dilemma in that while the evidence and the deputy's specific findings would strongly indicate that the claimant had not, as stipulated, reached MMI on January 30, 1980, no request was made for the deputy to disregard the stipulation, and the deputy did not see fit to do so on his own motion. Neither party has challenged the stipulated MMI date on appeal. We therefore do not disturb the deputy's reliance on the stipulation. However, in view of the overwhelming medical evidence of claimant's inability to work as of the time of the hearing in this case, we reverse that portion of the deputy's order basing the disability award on claimant's anatomical disability only, without consideration of any disability based on loss of wage earning capacity in excess of her anatomical disability.
The law is clear that where an injured person can handle only a specially created job, one requiring only light effort and responsibility, but laden with rest and comfort, the burden shifts to the E/C to show that such a job is in fact within the claimant's reach. If the E/C do not present such proof, the claimant is entitled to a permanent total disability finding. Smith v. Lake Butler Groves, Inc., 275 So.2d 229 (Fla. 1973); Port Everglades Terminal Co. v. Canty, 120 So.2d 596 (Fla. 1960). Here, the testimony of claimant's treating physician, considered in the light most favorable to appellees, clearly shows that claimant is able to handle only a specially created job involving no heavy work, one in which she can work for three hours and rest for several hours, and in which she would not be required to get up and move around. Further, Dr. Love testified that claimant is unable to work at this point because of her depression, even if a job might exist that she is capable of performing. It was error, in view of this evidence, to find that claimant's entitlement to consideration of her wage-earning capacity loss was dependent upon a job search. Burger Chef of Bradenton v. Benedetto, 394 So.2d 206 (Fla. 1st DCA 1981); Sizemore v. Canaveral Port Authority, 332 So.2d 23 (Fla. 1976); Chicken `N' Things v. Murray, 329 So.2d 302 (Fla. 1976).
As for the claimant's contention that the deputy commissioner erred in allowing a set-off for compensation previously paid for her permanent partial disability from a previous accident, we observe that the order in question provides for 50% permanent partial disability of the body as a whole "with an appropriate set-off for the previous settlement... ." We do not know what is meant by "appropriate," since the order contains no findings as to the application of Section 440.15(5)(c). Specifically, the order does not address the issue of whether the second injury is one that "merges" with the pre-existing permanent partial disability or impairment "to cause a permanent partial disability that is greater than that which would have resulted from the subsequent injury ... alone," nor does the order specify "the degree of disability that would have resulted from the subsequent injury ... if the previous disability had not existed." Section 440.15(5)(c), Florida Statutes (1977). We agree with claimant's contention that the order must be reversed for failure to provide a basis for review. Brevard County Clerk of Court v. Winslow, 399 So.2d 111 (Fla. 1st DCA 1981). However, we reject claimant's contention that the E/C waived any claim of set-off under this statute, since evidence bearing on this issue was introduced without objection. We note also that the order made no specific determination as to a set-off for social security benefits subject to review, since no social security benefits had been received as of the date of the hearing. We therefore find no basis for review of that portion of the order, since it has not been shown what, if any, justiciable issue exists as to social security benefits.
*889 Claimant further complains that it was error to require her to travel to Fort Myers for further treatment when no medical or practical necessity for such travel was shown. We agree. It was unreasonable for the deputy to require her to travel outside her home community in Naples where adequate treatment is available. Hall's Camp Inc. v. Decker, 394 So.2d 1041 (Fla. 1st DCA 1980).
Claimant further complains that the deputy commissioner ordered payment of Dr. Hussey's bill only through July 31, 1979, although he was authorized through September 1, 1979, and the deputy should have ordered payment through this date. Claimant also argues that temporary disability benefits were due through January 30, 1980 and the deputy erred in failing to award these benefits. The E/C concede these two points and we therefore modify the order accordingly.
In view of our reversal and remand, the deputy commissioner may enter such further orders for psychiatric care or treatment as may be appropriate, upon request of either party.
Finally, we have not overlooked the E/C's cross-appeal concerning the deputy's award of taxable costs, which we find to be totally without merit.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
BOOTH and THOMPSON, JJ., concur.
NOTES
[1] The deputy commissioner made a specific finding that Dr. Hussey was unable to apportion.