MILLS, Judge.
The Alachua County Board of County Commissioners and U.S. F. & G. Company (E/C) appeal from an order of the deputy commissioner awarding Griffis permanent total disability benefits. We affirm.
Griffis suffered an injury to his lower back in September 1982, and reached maximum medical improvement with 10% permanent impairment in April 1984. He was medically restricted to lifting a maximum of 20-25 pounds, to occasional bending and stooping, to four hours of sitting with breaks, and a maximum of two hours of standing and/or walking. There was no medical testimony that he could not perform even light work uninterruptedly as a result of the permanent disability.
The E/C paid temporary total benefits until MMI and wage-loss benefits thereafter until the hearing on the instant claim for permanent total benefits. The record reflects that Griffis commenced an exhaustive job search immediately upon reaching MMI, contacting an average of twenty employers per month. Along with his personal contacts of potential employers, Griffis consulted Job Service of Florida (formerly Florida State Employment Service), working with Cooney, a job placement specialist. Based on her experience, her knowledge through the Service of available jobs and Griffis’ physical limitations, Cooney opined that he had no ability to compete in the open labor market, even in light employment.
In March 1985, Griffis’ treating physician, Dr. Bullock, approved Griffis’ employment as a hot asphalt machine operator, a position located by the E/C. Griffis never attempted this job, however, because the same employer developed a more pressing need for a night watchman. The E/C offered to assist in the payment of Griffis’ wages as an incentive to the employer to offer him the job, and Griffis commenced working on 16 March 1985. No analysis of the job was prepared or medically approved prior to that date, but Dr. Bullock later approved the duties, described by the E/C as standing for IV2 hours and sitting for 10 hours, with a half-hour walking and the climbing of five feet of iron stairs 3 to 4 times per shift. On 12 April, Griffis complained to Bullock that the job was too much for him, and on 22 April, he was let go by the employer based on his difficulties.
The deputy granted Griffis’ claim for permanent total disability benefits, based on his permanent impairment, on the exhaustive unsuccessful job search and on the placement specialist’s testimony that *979 Griffis’ physical limitations left him unable to do even light work uninterruptedly. The E/C alleges that it was error to award PTD in the absence of medical testimony of inability to do even light work uninterruptedly. We disagree.
The absence of such testimony does not preclude a finding of permanent total disability. H.S. Camp & Sons v. Flynn, 450 So.2d 577, 579-80 (Fla. 1st DCA 1984). The deputy can properly consider a futile work search to determine the factual issue of ability to engage in light work. Camp; West Coast Insulation v. Lee, 464 So.2d 1317, 1318 (Fla. 1st DCA 1985). Here, Griffis undisputedly conducted an exhaustive unsuccessful work search commencing immediately after MMI and continuing until the hearing on this claim, a period of some 17 months. We find that this search provides competent, substantial evidence that Griffis was unable to do even light work uninterruptedly.
Once a claimant shows that he is so injured as not to be able uninterruptedly to do light work, it is incumbent upon the employer to show that suitable work is available. If the employer fails to meet that burden, the injured claimant should be found totally and permanently disabled. Loprinzo v. Maid Corp., 429 So.2d 1363, 1365 n. 1 (Fla. 1st DCA 1983). The E/C relies on Griffis’ employment as a night watchman in an attempt to meet this burden.
However, the record reflects that the E/C obtained the position for Griffis at least in part by offering to pay his wages. Further, Griffis was discharged after barely a month because of his physical difficulties in performing the job, a clear indication that the employment was not suitable. It is true that after Griffis commenced work Dr. Bullock approved the job, but the record is susceptible of the inference that he was not given a complete picture of the job before approving it. We therefore find that the E/C did not meet its burden to show that suitable work was available so as to overcome Griffis’ demonstration of inability to do even light work uninterruptedly.
Affirmed.
BOOTH, C.J., .and WENTWORTH, J., concur.