532 So.2d 28 (1988)
Michael J. CARSON, Appellant,
v.
GAINESWOOD CONDOMINIUMS, et al. and State Farm Insurance Company, Appellees.
No. 87-1236.
District Court of Appeal of Florida, First District.
September 13, 1988.
*29 Anthony J. Beisler, III, P.A., Fort Lauderdale, for appellant.
Jack A. Langdon of Langdon & McCarty, P.A., Gainesville, for appellees.
JOANOS, Judge.
Michael J. Carson (claimant) appeals a final workers' compensation order denying his claim for permanent total disability or permanent partial disability benefits. The issues raised in this appeal are: (1) whether the deputy commissioner's order is supported by competent substantial evidence, and (2) whether the deputy commissioner erred in failing to find claimant is permanently and totally disabled. We reverse and remand for more specific findings.
On July 17, 1977, claimant sustained a back injury in the course of his employment with Gaineswood Condominiums (employer). At that time, the Veterans Administration had given claimant a 70% service-connected disability, due primarily to nerves. On October 26, 1982, the employer and carrier accepted claimant as permanently and totally disabled, and provided benefits accordingly from October 27, 1982, until July 2, 1984. On June 25, 1984, the employer and carrier filed a notice to controvert on grounds that claimant was able to work, and that there was no evidence that claimant suffered any continuing impairment or disability from the accident beyond that for which compensation had been paid.
The record reflects that claimant served in the Pacific theater during World War II, and after the war, he continued in government employment acting in various intelligence-related capacities. After his July 1977 fall, claimant developed severe back pain, and on July 20, 1977, he was taken by ambulance to the Gainesville Veterans Administration Hospital, with an acute onset of low back pain and left lower extremity radicular pain. The hospital admission summary states in part that claimant "ha[d] a long history of low back pain and right lower extremity radicular pain secondary to a service connected injury." When questioned about these purported pre-existing back problems, claimant explained his prior back problems were due to a pilonidal cyst, and that he had never experienced ongoing back pain of the type associated with the work-related back injury. Despite bed rest and medication, claimant continued to experience severe back problems. In addition, he developed a condition known as drop foot, which was related to the back injury. In 1978, claimant was examined at Ochsner Clinic, and immediate *30 surgery was recommended. After undergoing a lumbar laminectomy in May 1978, claimant experienced initial relief, but his pain returned; the medical records reflect that since that time he has had persistent back pain.
On June 30, 1978, claimant resigned as manager of employer Gaineswood Condominiums, effective July 9, 1978, to take a position with Lake City Community College. Claimant worked full-time at the community college in the areas of vocational evaluation, testing and guidance, until October 1978, when he was readmitted to the Veterans Administration Hospital with lower back and leg pain, and a nervous condition. On April 10, 1979, claimant was examined by Dr. Arthur Rehme, orthopedist, with, among other things, complaints of lower back and leg pains, and numb left leg. Dr. Rehme found claimant had residual effects of his spinal stenosis and previous surgery, with mild arthritis of cervical spine and some arthritis of the lumbosacral spine. In a follow-up report dated July 25, 1979, Dr. Rehme assigned claimant a permanent functional impairment of 20% of the whole body as a result of his back injury. The report also reflects that in Dr. Rehme's opinion, claimant's psychological problems were more severe than his organic problems.
In February 1979, the Veterans Administration notified claimant that his 70% service-connected disability rating had been increased to 100%, retroactive to May 1978, the date of the back surgery. At the hearing, claimant explained that although his service-connected disability was due primarily to nerves, the Veterans Administration rated him as 100% disabled as of the date of his back operation, because it was at that point that he was deemed unemployable.
A psychiatric evaluation dated April 6, 1981, reflects that claimant was suffering from depression secondary to the back injury and the subsequent pain and deficit experienced in relation to the surgery. This report indicates that claimant's prognosis for recovery and return to work were poor. At claimant's request, Dr. Wright provided a letter report dated September 15, 1982, which states that claimant has peripheral neuropathy and radicular nerve pain and secondary degenerative arthritis as a result of his original surgery, and that claimant is totally and permanently disabled because of these medical problems. Dr. Wright further stated that claimant had reached maximum medical improvement, and was totally and permanently disabled for any practical employment efforts.
The deposition of Dr. Rehme, claimant's orthopedic surgeon, reflects that claimant's back problems were the type that would have him feeling totally disabled one day, and reasonably well on another day. Dr. Rehme stated he had increased the former disability rating he had given claimant from 20% to 25%, based on definite changes revealed by x-rays. Dr. Rehme explained that the arthritic changes revealed in the x-rays were related to claimant's back surgery, and that as a result of these changes, claimant would have additional back pain from this point on. According to Dr. Rehme, claimant must avoid any type of heavy manual labor, and he was prohibited from performing some aspects of a condominium manager's job  such as ladder climbing, crawling, lifting and straining at heavy equipment.
Dr. Cote, Veterans Administration orthopedist, began treating claimant in July 1985. Dr. Cote noted that claimant had had back surgery, and was using a TNS unit and taking codeine for chronic pain. He also stated that claimant had undergone surgery for placement of electrical implants for control of his chronic pain, although the implants later had to be removed. Dr. Cote diagnosed claimant's condition as degenerative arthritis and degenerative disc disease of the lumbar spine. Like Dr. Rehme, Dr. Cote explained that claimant could function fairly well some days, and on other days he could be confined to bed due to a flareup. He further stated that although claimant was functioning with the aid of the TNS unit and pain medication, he is forced to lead a sedentary existence.
*31 A private investigator retained by the employer and carrier testified at the hearing regarding his surveillance of claimant. This surveillance was videotaped on June 14, 15, and 16, 1984; August 29, 1984; October 24, 1984; June 29, 1985; and March 26, 1987. A surveillance report and four surveillance tapes, totalling 6-1/2 hours in all, were introduced into evidence. The tapes show claimant involved in a variety of activities such as driving, walking, washing boat cushions, boat riding, walking around a marina office, talking on the telephone, cleaning waste baskets, drinking coffee, removing trash from the trunk of his car and placing it in a dumpster, walking into the Veterans Administration building with the use of a cane, spraying a driveway and his car with a hose, and washing a car. The tapes depict claimant engaging in these activities with no discernible difficulty.
On August 19, 1987, the deputy commissioner entered an order finding, among other things, that claimant failed to show that he has any permanent impairment or permanent disability beyond the 25% of the body as a whole assigned by his physician. In addition, the order states that claimant failed to prove that he is permanently and totally disabled, and specifically rejected all medical evidence to the contrary. The order further states that in arriving at this conclusion, the deputy commissioner considered that the surveillance films introduced into evidence "clearly show that the claimant is not as physically impaired as he claims to his doctors," and that the medical reports of the Veterans Administration Hospital indicate that claimant had complaints of low back problems before the accident of July 17, 1977. In the order, the deputy expresses doubt concerning the reliability of claimant's testimony, apparently based on the deputy commissioner's skepticism concerning statements made by claimant regarding his work with the National Security Council. It appears that this skepticism was the basis for denial of the claim for permanent total or permanent partial disability benefits.
It is well settled that this court is bound by the deputy's view of the facts, unless the factual findings are clearly erroneous. Chicken 'n Things v. Murray, 329 So.2d 302 (Fla. 1976). As a consequence, we will "only review whether the record contains competent, substantial evidence to support the deputy's order." Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983). Conversely, if the record demonstrates an absence of competent substantial evidence to support the deputy's determination, the order will be reversed and remanded for further proceedings. Collazo v. Sourini Painting Company, 516 So.2d 288 (Fla. 1st DCA 1987).
Furthermore, while it is the deputy's prerogative to determine the credibility of witnesses, Grillo v. Big "B" Ranch, 328 So.2d 429 (Fla. 1976), the deputy is not required to accept the testimony of a witness merely because that witness is competent to testify on a given subject. Paul H. Cowart/Building Specialty v. Cowart, 481 So.2d 83, 84 (Fla. 1st DCA 1986). Nevertheless, where, as in the instant case, the issue before the deputy involves essentially a medical question, this court has required the deputy to "offer a sufficient reason for rejecting expert medical testimony, especially if such testimony is unrefuted." Blocker v. Ardmore Farms, 524 So.2d 1081 (Fla. 1st DCA 1988). See also Mirlisena v. Chemlawn Corp., 527 So.2d 908 (Fla. 1st DCA 1988). While generally, a deputy need not explain why he accepts the testimony of one doctor over that of several others, his discretion in this regard is not unbridled, since a deputy must still make "such findings of ultimate material fact upon which he relies, as are sufficient justification to show the basis of an award or a denial of the claim." Curry v. Miami Dolphins, Ltd., 522 So.2d 1010 (Fla. 1st DCA 1988), quoting Pierce v. Piper Aircraft Corp., 279 So.2d 281 (Fla. 1973), cert. denied, 292 So.2d 19 (Fla. 1974). See also Vargas v. Americana of Bal Harbour, 345 So.2d 1052 (Fla. 1976); South v. Heartland Employment & Training Administration, 527 So.2d 270 (Fla. 1st DCA 1988).
In a case presenting a fact scenario similar to the instant case, the deputy rejected the opinions of the treating physicians and *32 psychiatrist that claimant's depression and periods of hospitalization were causally related to her industrial accident, because the employer and carrier introduced evidence showing that the claimant had suffered from depression and suicidal tendencies before her accident  and neither doctor was aware of any prior emotional problems. Curtis v. Florida Correctional Institute, 509 So.2d 1192 (Fla. 1st DCA 1987). This court held that the deputy erred in rejecting the testimony of the doctors, since neither doctor stated that his opinion as to the causal relationship between the claimant's accident and her emotional problems would have changed had he been fully apprised concerning the claimant's psychiatric history. 509 So.2d at 1194.
In a similar vein, in Walker v. Allied Septic Tanks, 522 So.2d 456 (Fla. 1st DCA 1988), as in the instant case, the deputy's order stated "in effect that claimant's testimony was suspect and lacked credibility, and that his continuing complaints were not credible." 522 So.2d at 457-458. The deputy in Walker rejected a chiropractor's opinions that the industrial accident caused claimant's symptoms, because the opinions were based on a history taken from the claimant, which the deputy had determined was not credible. After reviewing the facts, this court concluded they supplied no substance to the deputy's conclusion on credibility, or to his consequent rejection of all medical evidence presented at the hearing. Citing Curtis v. Florida Correctional Institute for the proposition "that a claimant's lack of credibility does not justify the deputy in rejecting the only competent substantial evidence of the cause of claimant's current condition," the court reversed and remanded for further proceedings. See also Calleyro v. Mt. Sinai Hospital, 504 So.2d 1336 (Fla. 1st DCA), review denied, 513 So.2d 1062 (Fla. 1987), holding that a deputy may not reject unrefuted psychiatric testimony on the basis of a single inaccuracy in the history given to the psychiatrist by a claimant, and that the deputy erred in rejecting the claimant's testimony without an explanation of how her credibility was tarnished; and Crime Control, Inc. v. Burston, 522 So.2d 929, 930 (Fla. 1st DCA 1988), cautioning that orders will be reversed "in cases where it appears that the findings of fact which are erroneous or are of questionable validity are not superfluous but are material to the decision reached."
To demonstrate entitlement to permanent total disability benefits, an injured employee is not required to show that he is "completely immobilized or utterly incapacitated." Richardson v. City of Tampa, 175 So.2d 43, 44 (Fla. 1965). However, a claimant must establish that his injury precludes him from doing even light work uninterruptedly. Alachua County Board of County Commissioners v. Griffis, 498 So.2d 977, 979 (Fla. 1st DCA 1986). See also Loprinzo v. Mald Corp., 429 So.2d 1363, 1365 n. 1 (Fla. 1st DCA 1983); Wright v. Gulf and Western Food Products, 401 So.2d 1316 (Fla. 1981). In addition, the claimant must demonstrate a causal relationship between his disability and the industrial injury. Where, as in the instant case, the industrial injury involves soft-tissue injuries to the lower back which are not readily observable, the claimant must provide medical testimony to establish a causal relationship between the back problems and the industrial injury. Peters v. Armellini Express Lines, 527 So.2d 266 (Fla. 1st DCA 1988).
In this case, apparently on the basis of surveillance tapes taken in 1984, 1985, and 1987, the deputy commissioner expressly rejected expert medical opinion that claimant was permanently and totally disabled. The deputy found the tapes demonstrated that claimant had not been truthful in the history he provided to his doctors regarding the extent of his physical impairment. The deputy also expressed doubt concerning claimant's testimony regarding his Veterans Administration records, purportedly altered for reasons of national security. In addition, the deputy questioned claimant's admission that he had had several previous social security numbers and names, but refused to reveal them on grounds of national security. In Walker v. Allied Septic Tanks, this court held that the claimant's lack of credibility would not justify rejection *33 of medical opinions based on both evaluation and history.
Moreover, the activities claimant is shown performing on the surveillance tapes are generally consistent with his testimony and that of the medical experts regarding his impairment. At the hearing, claimant testified that because his legs give way from time to time, the Veterans Administration furnished him first with a cane, and then with crutches, both of which he uses on an "as need" basis. Claimant stated that on some days he feels well enough "to take on the world," and on other days he is confined to a recliner or bed. The medical records and medical testimony are in accord. Although the surveillance tapes show claimant performing a variety of activities, none of the activities depicted are strenuous or inconsistent with the limitations expressed by the treating physicians.
We recognize that the surveillance tapes in evidence in this case show claimant walking with the aid of crutches and cane on only two occasions  to enter the hospital and to attend a deposition. Despite the inference suggested by this evidence, we deem it insufficient, without more, to overcome the unrefuted medical evidence in this record. Furthermore, contrary to the view expressed by the deputy, the medical opinions regarding the extent of claimant's physical disability were not based solely on the account which he provided to his treating physicians. Rather, those medical opinions were based on objective findings, as well as on claimant's representations.
It is undisputed in this case that a causal connection was established between claimant's July 1977 industrial injury and his disability. In addition, the record contains medical testimony that claimant is no longer able to perform the job of condominium manager. The adequacy of claimant's efforts to obtain employment after reaching maximum medical improvement has not been challenged on this appeal. Although the deputy found that claimant proved he has a 25% permanent impairment of the whole body, the deputy also found that claimant has not shown that he is permanently and totally disabled, and that he was entitled to benefits, either permanent partial or permanent total.
We conclude that the deputy's order fails to set forth sufficient reasons for rejecting unrefuted medical testimony on what is essentially a medical question. See Blocker v. Ardmore Farms, supra; Curry v. Miami Dolphins, Ltd., supra; Curtis v. Florida Correctional Institute, supra. In addition, we are unable to determine with any degree of certainty the deputy's reasons for finding claimant's testimony unreliable. See Walker v. Allied Septic Tanks, supra. Therefore, we reverse the order and remand to the deputy with directions to articulate specific and detailed reasons for his rejection of the unrefuted medical testimony, and to explain how claimant's testimony regarding his physical capabilities was inconsistent with the activities depicted in the videotapes. See Taylor v. Stanley Industrial Corporation and Claims Center, 528 So.2d 1292 (Fla. 1st DCA 1988); South v. Heartland Employment & Training Administration, supra; Perez v. Tropicana Products, Inc., 496 So.2d 967 (Fla. 1st DCA 1986).
Accordingly, this cause is reversed and remanded for further proceedings to permit the deputy to clarify his order, or to award the benefits claimed.
ERVIN, J., concurs.
NIMMONS, J., dissents with opinion.
NIMMONS, Judge, dissenting.
I would affirm. In my view there was competent substantial evidence, including the surveillance report and 6 1/2 hours of surveillance videotapes, to support the deputy commissioner's order.