555 So.2d 419 (1989)
Abraham LERMAN, Appellant,
v.
BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS and Risk Management Division, Appellees.
No. 88-1011.
District Court of Appeal of Florida, First District.
December 22, 1989.
*420 Stuart F. Suskin, of Abrams & Suskin, North Miami Beach, for appellant.
Anthony J. Beisler, III, of Beisler and Beisler, Ft. Lauderdale, for appellees.
JOANOS, Judge.
Claimant Abraham Lerman appeals the deputy commissioner's order denying his claim for permanent total disability, limiting his temporary total disability benefits to a period of six months, and denying psychiatric care. The issues for our review are (1) whether the deputy commissioner erred in failing to award permanent total disability following maximum medical improvement, (2) whether the deputy commissioner erred in limiting temporary total disability benefits to the six months following surgery, and (3) whether the deputy commissioner erred in denying payment for psychiatric care. We reverse and remand with directions.
On August 8, 1985, in the course of his duties as a detention officer for the Broward County Sheriff's Department, claimant assisted in quelling a prison riot at the Pompano Detention Center. Specifically, claimant loaded a canvas laundry basket with heavy riot gear, and then ran, pulling the riot gear 1,060 feet in ninety-six degree heat. Claimant then helped subdue the rioting prisoners. By the time the riot was over, claimant was sweating profusely, was short of breath, and was experiencing severe chest pains. He was taken to North Broward Medical Center, where his condition was diagnosed as angina pectoris with arteriosclerotic disease. Physicians at North Broward wanted to perform an angiogram, but claimant preferred to have the procedure performed by his own physician at Miami Heart Institute. He was discharged from North Broward on August 13, 1985, and was admitted to Miami Heart Institute on August 13, 1985. The angiogram was performed, and on August 29, *421 1985, claimant underwent double by-pass surgery.
The record reflects that previously, in 1971, claimant underwent surgery for a left ventricle aneurysm in Miami Heart Institute. He made a good recovery from the first heart surgery. On September 2, 1975, he began working for the Broward County Sheriff's Department, where he continued until his involuntary retirement on May 1, 1986. Eleven months before the accident in this case, claimant had undergone a cardiac evaluation in connection with the renewal of his pilot's license. He was pronounced free of pathology, and the license was approved.
Since the August 29, 1985, by-pass surgery, claimant has remained under the care of Dr. Berger, who has been his cardiologist since 1971. In addition, he sees Dr. Hevert, an internist, on a regular basis. Claimant has also received psychotherapy from Dr. Feldman, a clinical psychologist, for post-surgical depression. At the request of the Florida Department of Retirement, claimant was examined by Dr. Epstein, a psychiatrist, to determine his eligibility for in-line-of-duty disability retirement benefits. Dr. Epstein concluded that the work-related emotional and physical stresses which occurred on August 8, 1985, have rendered claimant permanently and totally disabled from performing his previous duties as a correction officer. Further, Dr. Epstein found that claimant was experiencing anxiety, depression, and marked resentment at the thought of being required to perform work with less status and less pay than he had achieved at the time of the industrial accident. Dr. Epstein's report states that emotional stress of this nature has contributed to claimant's cardiac symptoms, and as a consequence, he is totally and permanently disabled from performing other gainful employment, which of necessity, would involve lower status and lower pay than he had enjoyed in his work with the Sheriff's Department.
At the request of the employer and carrier, claimant was examined by another psychiatrist, Dr. Zager. Dr. Zager did not testify but his report was made a part of the record. According to Dr. Zager's report, claimant is free of psychotic thought disorders and overt delusions, and does not suffer from a major psychiatric disorder. Dr. Zager recognized claimant's reluctance to accept a menial or minimum wage position, but stated that his psychiatric disability was not an impediment to such a position. In summary, Dr. Zager deferred to claimant's treating cardiologist with regard to recommended physical limitations on his work activity, but concluded that claimant does not suffer from any major psychiatric disability that precludes employment.
In a combined psychological-rehabilitation-vocational evaluation, Dr. Feldman, claimant's treating psychologist, found that clinically claimant "demonstrated an alternatively depressed, agitated and anxiety laden personality which becomes stressful and tense when contemplating his future." Dr. Feldman said claimant's concerns centered around his realistic fear of cardiac failure or thrombosis, and his distress at being forced to work in a minimum wage vocation. Dr. Feldman's conclusions were that: (1) from a vocational point of view, claimant is permanently and totally unemployable in any position; (2) claimant had reached maximum psychological improvement, but would require periodic supportive psychotherapy to prevent him from deteriorating and reverting back to his more intense depressed, impulsive and anxious state of mind; (3) claimant's current mental state, according to the Diagnostic and Statistical Manual of Mental Disorders and the American Medical Association Guidelines to Impairment, is one of one hundred percent employment disability and thirty percent mental disability; and (4) in all likelihood, claimant's condition will deteriorate if he is forced to do menial minimum wage employment, after having achieved promotion to police lieutenant with all the emotional support and respect that such an identity and position implies.
According to Dr. Berger, claimant's treating cardiologist, claimant is no longer employable as a full-time, active police officer, and if that is the only option available to him, then he is totally disabled. Dr. Berger expressed no opinion concerning *422 claimant's ability to perform work other than police work. Dr. Hevert, claimant's treating internist, testified that claimant has a twenty to forty-five percent physical impairment in accordance with the American Medical Association Guidelines. In March 1986, Dr. Hevert expressed the opinion that possibly claimant could perform some type of sedentary work program. However, in June 1986, after having seen claimant on several occasions since rendering his March opinion, Dr. Hevert modified that opinion to reflect that claimant is totally disabled, even for sedentary work. Dr. Hevert observed that claimant is easily stressed and agitated, and that even minor activities would stress him significantly and could aggravate his underlying cardiac condition.
Claimant's testimony reflects his belief that his doctors would not permit him to return to work. Claimant also testified that the employer/carrier had not communicated with him concerning a return to work in any capacity, and had not advised that he should be conducting a work search. Further, it is undisputed that employer/carrier offered no rehabilitative or vocational counseling or assistance.
On April 4, 1988, the deputy commissioner entered an order finding that claimant suffered a compensable injury as a result of the stressful activities involved in helping to quell a major disturbance at the detention center. However, the deputy rejected claimant's testimony regarding his psychiatric problem, as well as the opinion of claimant's clinical psychologist, Dr. Feldman, and that of examining psychiatrist, Dr. Epstein. Instead, the deputy accepted the opinion included in Dr. Zager's report, stating that he knew Dr. Zager and found that his opinion comported more with reason and logic with regard to claimant's ability to perform work other than that of a detention deputy. The order indicates that the deputy was also influenced by the fact that Dr. Zager is a medical doctor, while Dr. Feldman is a doctor of philosophy. The deputy concluded that claimant failed to establish entitlement to permanent total disability, finding that claimant could secure employment within his physical limitations and restrictions if he were motivated to return to work. In addition, the deputy expressly found that claimant had not sustained a significant emotional reaction to the industrial accident and resulting heart surgery, and therefore denied payment of Dr. Feldman's bills for psychological care. Finally, the deputy awarded temporary total disability benefits for six months following claimant's open heart surgery, but denied such benefits through the date of maximum medical improvement.
With regard to the first issue, a claimant is not required to show that he is totally physically incapacitated before a determination of permanent total disability can be made. Richardson v. City of Tampa, 175 So.2d 43, 44 (Fla. 1965); Carson v. Gaineswood Condominiums, 532 So.2d 28, 32 (Fla. 1st DCA 1988). Rather, the test is whether the claimant is unable to do even light work on an uninterrupted basis. § 440.15(1)(b), Fla. Stat. (1985); Carson v. Gaineswood Condominiums, 532 So.2d at 32; Alachua County Board of County Commissioners v. Griffis, 498 So.2d 977, 979 (Fla. 1st DCA 1986). Once a claimant has established an inability to perform light work uninterruptedly, "it is incumbent upon the employer to show that suitable work is available, and if the employer fails to meet that burden, the D/C should hold that the injured worker is PTD." Wilhoit International v. Tidwell, 497 So.2d 958, 961 (Fla. 1st DCA 1986). See also Loprinzo v. Mald Corp., 429 So.2d 1363, 1365 n. 1 (Fla. 1st DCA 1983). Similarly, where the medical evidence shows the claimant has some capacity for light work, evidence of a lengthy, exhaustive job search, which proves completely unsuccessful, will support a finding of permanent total disability. H.S. Camp & Sons v. Flynn, 450 So.2d 577, 579 (Fla. 1st DCA 1984). See also Oak Construction Co. v. Jackson, 522 So.2d 1068, 1071 (Fla. 1st DCA 1988); Holiday Inn v. Sallee, 496 So.2d 227 (Fla. 1st DCA 1986); West Coast Insulation v. Lee, 464 So.2d 1317, 1318 (Fla. 1st DCA 1985).
It is well settled that it is the employer/carrier's responsibility to apprise *423 the claimant of his possible entitlement to benefits and his duty to conduct a work search. § 440.185(10), Fla. Stat. (1985). Therefore, a work search will be excused where: (1) the employer and carrier fail to inform the claimant of his obligation to perform and to document such search, Griffith v. McDonalds, 526 So.2d 1032, 1033 (Fla. 1st DCA 1988); Coq v. Fuchs Baking Co., 507 So.2d 138, 141 (Fla. 1st DCA 1987); or (2) the record demonstrates that claimant neither knew nor should have known that he was medically released to return to work. Perez v. Publix Supermarkets, Inc., 520 So.2d 610 (Fla. 1st DCA 1987); Davis & Phillips v. Jordan, 483 So.2d 534 (Fla. 1st DCA 1986); Daytona Linen Service v. Davis, 454 So.2d 46 (Fla. 1st DCA 1984). As to the latter basis for excusing a work search, this court has determined that a doctor's communication concerning claimant's release to work must be clear and unequivocal. Davis & Phillips v. Jordan, 483 So.2d at 536.
Furthermore, in a proper case, the state of the claimant's mental health may serve to excuse the job search requirement. For example, in Sizemore v. Canaveral Port Authority, 332 So.2d 23 (Fla. 1976), the medical testimony established that the claimant was physically disqualified from any strenuous activity, and that his mental health was such as to disqualify him from gainful employment. Sizemore's condition "was described as one of severe depression, frustration and anxiety secondary to the diagnosis, a reaction much like that a very serious cancer or cardiac patient would experience." 332 So.2d at 24-25. On the basis of the proven mental aspect of the claimant's health, the supreme court determined that a job search was not necessary. See also Anderson v. S & S Diversified, Inc., 477 So.2d 591, 594 (Fla. 1st DCA 1985), review denied, 486 So.2d 597 (Fla. 1986); Wright v. Golf Drive Residence, Inc., 412 So.2d 884, 888 (Fla. 1st DCA), review denied, 419 So.2d 1198 (Fla. 1982); Dade County School Board v. Gibavitch, 397 So.2d 1142 (Fla. 1st DCA 1981); Burger Chef of Bradenton v. Benedetto, 394 So.2d 206, 207 (Fla. 1st DCA 1981).
The record in this case reflects that (1) claimant's treating physicians had not advised him that he was released to seek work within his medical restrictions, (2) claimant believed that his physicians had not released him to return to work, and (3) the employer/carrier did not inform claimant of his duty to perform and to document a work search to establish his entitlement to disability benefits. Thus, claimant has met the criteria for excuse of a work search. In addition, in this case, as in Sizemore, claimant's treating physicians opined that the mental aspect of his health precludes gainful employment.
Moreover, Dr. Hevert, claimant's internist, testified unequivocally that even light duty work would serve to exacerbate claimant's heart condition. According to Dr. Hevert and Dr. Berger, claimant's cardiologist, in addition to his cardiac disability, claimant suffers from anxiety and depression resulting from his physical condition. Dr. Hevert explained that claimant's mental state has a direct bearing on, and cannot be separated from, his physical condition,
The deputy commissioner's denial of permanent total disability apparently was predicated on Dr. Zager's report. This report, in which Dr. Zager concluded that claimant does not suffer from a major psychiatric disability that would preclude him from performing work other than police work, pertained solely to claimant's psychiatric condition. The deputy commissioner's order does not indicate that he considered the testimony of claimant's internist and cardiologist in the permanent total disability determination. Although it is clear from the deputy's order that he did not overlook or ignore the opinion of the examining psychiatrist or claimant's treating clinical psychologist, it does appear that he overlooked or ignored Dr. Hevert's testimony that claimant is permanently and totally disabled from a cardiology standpoint.
In the circumstances of this case, it was incumbent upon the deputy commissioner to consider claimant's heart condition as well as his psychiatric condition, in making the permanent total disability determination. *424 It is an abuse of discretion to reject unrefuted medical testimony on what is essentially a medical question, without a reasonable explanation. Olsen v. Wellcraft Marine Corporation, 540 So.2d 878 (Fla. 1st DCA 1989); D'Amico v. Westinghouse Electric Corporation, 527 So.2d 855 (Fla. 1st DCA 1988); Blocker v. Ardmore Farms, 524 So.2d 1081 (Fla. 1st DCA) review denied, 531 So.2d 167 (Fla. 1988); Giaramita v. Dade County School Board, 484 So.2d 1312, 1314 (Fla. 1st DCA 1986). Therefore, we find the question of permanent total disability must be remanded to the deputy commissioner with directions to articulate with particularity, his reasons for rejecting unrefuted medical testimony that claimant is permanently and totally disabled from a medical standpoint, and to clarify the reasons for accepting Dr. Zager's opinion over that of claimant's treating physicians with respect to the mental aspect of claimant's health or to grant relief to claimant.
The second issue concerns the limitation of temporary total disability benefits to the six month period following claimant's by-pass surgery. It is well settled that temporary total disability benefits should continue until an injured worker reaches maximum medical improvement or is able to return to work. By the same token, benefits may not be denied where the record demonstrates that the claimant has not been medically released to return to work, or where the record demonstrates that the employer/carrier failed to inform the claimant of his responsibility to perform a work search to establish eligibility for disability payments. Griffith v. McDonalds, 526 So.2d 1032 (Fla. 1st DCA 1988); Fulmer-Orlando v. Taylor, 419 So.2d 734, 735 (Fla. 1st DCA 1982).
There is nothing in the record before this court to indicate that claimant was released to return to work by either of his treating physicians. Rather, Dr. Hevert testified unequivocally that he had never released claimant to return to work. In addition, it is undisputed that the employer and carrier did not advise claimant of his responsibility to seek work within his medical restrictions, and to document such search. Therefore, we reverse the deputy commissioner's limitation of temporary total disability benefits for the six months following surgery, and remand with directions to award benefits up until the date of maximum medical improvement.
The third issue concerns the denial of psychiatric care. Clearly, it is the deputy commissioner's function to determine credibility and to resolve conflicts in the evidence, and he may accept the opinion of one physician over that of several others without explanation, provided his reason for doing so is apparent from the record, or it appears the contrary testimony has not been overlooked or ignored. See Haas v. Seekell, 538 So.2d 1333 (Fla. 1st DCA 1989); Curry v. Miami Dolphins, Ltd., 522 So.2d 1010, 1011-1012 (Fla. 1st DCA 1988), and cases cited therein. Where, as in the instant case, the question concerns the causal relationship between a claimant's mental condition and injuries he suffered in an industrial accident, the opinion of a clinical psychologist constitutes competent, substantial evidence to support an award of disability benefits. Westinghouse Electric Corp. v. Lawrence, 488 So.2d 623 (Fla. 1st DCA 1986). Accord Haas v. Seekell, 538 So.2d at 1335-37. In other words, the fact that an opinion is rendered by a psychologist rather than by a psychiatrist, is not sufficient, without more, to reject the psychologist's opinion.
In the instant case, the deputy commissioner expressly rejected claimant's testimony and that of his treating clinical psychologist, with regard to the mental aspect of claimant's health. The psychologist's testimony was rejected with the statement that he is a doctor of philosophy, not a medical doctor. Since the opinion of a clinical psychologist can constitute competent, substantial evidence to support an award of disability benefits, Westinghouse Electric Corporation v. Lawrence, the fact that an opinion is rendered by a psychologist rather than a psychiatrist is not a sufficient ground to reject the psychologist's opinion. The deputy also rejected, without explanation, the opinion of Dr. Epstein, *425 the psychiatrist who examined claimant on behalf of the Division of Retirement.
With the exception of Dr. Zager's report, all of the medical testimony and reports demonstrate that claimant is suffering from anxiety and depression related to the state of his health following his second open heart surgery. Although we are cognizant of the deference due the deputy's opportunity to observe claimant's demeanor, we are not persuaded that in the circumstances of this case, Dr. Zager's opinion is competent to support the deputy's finding that there is no causal relationship between claimant's industrial injury and his need for supportive psychiatric or psychological care. See generally, Tucker v. Agrico Chemical Co., 476 So.2d 729 (Fla. 1st DCA 1985).
Therefore, in light of the rule that the vantage point of the reviewing court is not inferior to that of the deputy with regard to deposition evidence, "which implicitly includes reports and letters," see Metropolitan Transit Authority v. Bradshaw, 478 So.2d 115, 116-117 (Fla. 1st DCA 1985); Haga v. Clay Hyder Trucking Lines, 397 So.2d 428 (Fla. 1st DCA 1981), we reverse the deputy commissioner's denial of psychiatric care, and remand with directions to review the matter of payment of Dr. Feldman's bills, and to reconsider claimant's possible need for continuing supportive psychiatric care. See Lawson v. Certified Grocers, 531 So.2d 985 (Fla. 1st DCA 1988).
Accordingly, the denial of permanent total disability is remanded with directions to articulate specific reasons for rejecting unrefuted medical testimony that claimant is permanently totally disabled, and has not been returned to work by his treating physicians, or to grant relief to claimant. The limitation of temporary total disability benefits to the six-month period following surgery is reversed and remanded, with directions to award temporary total disability benefits up to July 16, 1987, the date of maximum medical improvement. Finally, the denial of payment of Dr. Feldman's bills is reversed and remanded with directions to reconsider payment of these bills, and to reconsider claimant's need for continuing supportive psychiatric care.
MINER, J., concurs.
BOOTH, J., concurs in part and dissents in part with opinion.
BOOTH, Judge, concurring in part and dissenting in part.
I agree that reversal is required on points one and two since the judge's order does not address the issue of whether claimant was ever released to return to work. However, as to point three, the judge was entitled to base his determination on the testimony of Dr. Zager, as the judge expressly did, and to reject inconsistent testimony.