Robert J. DeCHANDT, Appellant,

v.

NORTH DAKOTA WORKERS COM-
PENSATION BUREAU, Appellee,

and

County Commissioners of Ward
County, Respondent.

Civ. No. 890184.

Supreme Court of North Dakota.

March 1, 1990.

Brenda M. Zent, of Farhart, Lian, Max-
son, Howard & Sorensen, P.C., Minot, for
appellant.

Hugh Patrick Seaworth, Asst. Atty.
Gen., North Dakota Workers Compensation
Bureau, Bismarck, for appellee.

VANDE WALLE, Justice.

Robert J. DeChandt has appealed from a
district court judgment affirming a North
Dakota Workers Compensation Bureau de-
cision denying benefits beyond those al-
ready paid and ordering him to reimburse
benefits paid since August 21, 1987. We
reverse and remand for further proceed-
ings.

While in the course of his employment as
a Ward County deputy sheriff, DeChandt
was injured in a helicopter crash on July
31, 1985. After an initial denial of De-
Chandt's claim and a subsequent hearing,
the Bureau accepted liability and awarded
benefits. When DeChandt and the Bureau
proposed to enter into a lump-sum settle-
ment of DeChandt's claim, DeChandt's for-
mer employer protested and requested that
the proceedings be reopened.

The Bureau reopened the proceedings
and after a hearing [1] in May 1988 made the
following findings of fact:

"VI.

"... The Bureau finds that the claimant
is no longer disabled as a result of his
injury of July 31, 1985, and he is capable
of performing any and all work activities.

\* \* \* \* \* \*

---

**1.** The issues specified by the Bureau were (1)
whether DeChandt is totally disabled as a result
of his July 31, 1985, injury, and (2) whether he
is entitled to any further benefits.

"VIII.

"Claimant was no longer disabled and was capable of performing any and all work activities on or before August 21, 1987."

The Bureau concluded that DeChandt failed to prove that he remained disabled and entitled to further benefits. The Bureau ordered that benefits beyond those already paid be denied and ordered reimbursement of benefits paid since August 21, 1987. The district court affirmed and DeChandt appealed, raising the following issue:

"Whether Robert DeChandt has proven by a preponderance of the evidence that he remains disabled and is entitled to further benefits under the North Dakota Worker's Compensation Act in connection with his injury sustained on July 31, 1985."

Pursuant to Section 28–32–19, N.D.C.C., we must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence or its conclusions are not supported by its findings of fact. *Howes v. Workers Compensation Bureau*, 429 N.W.2d 730 (N.D. 1988). We must determine "whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979).

■ Although it is within the province of the Bureau to weigh and resolve conflicting medical opinions, if there is conflicting medical evidence the Bureau must adequately explain its reason for disregarding evidence favorable to the claimant. *Hayden v. North Dakota Workers Compensation Bureau*, 447 N.W.2d 489 (N.D.1989). The Bureau must clarify discrepancies among inconsistent medical reports. *Id.; Howes v. Workers Compensation Bureau*, *supra*.

■ Dr. James Adams, a neurological surgeon who examined DeChandt more than 40 times [2] between September 1985 and April 1988, testified that DeChandt's "complaints of pain were substantiated by our clinical examination"; that x-rays, a CT scan and a myelogram showed that DeChandt has degenerative osteoarthritis that was aggravated by the crash; and that DeChandt has a "pain syndrome that has never improved.... I was able to verify this by objective examination and observation." Dr. Adams explained:

"The cervical spine, the mid-thoracic spine, both shoulders, both arms, associated with a headache. When he attempted to do any type of heavy physical work or moderately heavy physical work, he could do it with pain. The longer he persisted, the worse the pain would become until, finally, with experience he learned that he just would have to stop, which he did, and then he might take a day or two of complete bedrest or total inactivity and the pain then will ease down. So this is characteristic of patients who have posttraumatic osteoarthritis, it being aggravated, and I've seen hundreds of patients like this. There's no doubt in my mind of his problem.

\*　　\*　　\*　　\*　　\*　　\*

"So if I can see him on a good day or a bad day only once, your evaluation would be improper, but when you see a patient time after time after time, you have a certain sense of how things are with that person and that's how it is with Robert. He's disabled."

He testified that "[w]ork activity is just absolutely totally contraindicated. It just aggravates the problem." When asked if he believed "Robert is capable of performing physical activity over sedentary levels," he replied: "Never. Oh, he can, but I would absolutely not recommend it. It would be painful and it shouldn't be done."

Dr. David B. Ketroser, who examined DeChandt once at the Bureau's request, stated in a letter to the Bureau:

"OBJECTIVE FACTORS: This patient demonstrates a normal objective evalua-

2. The Bureau had advised DeChandt by letter: "Please be appraised of the fact that you must continue to see your doctor approximately once a month. Failure to receive medical reports in the Bureau could result in the delay in compensation payments."

tion with normal strength, reflexes and range of motion, and the absence of any muscle spasm. He has also reportedly undergone a myelogram which revealed no clinically significant abnormalities.

\* \* \* \* \* \*

"DISABILITY RATING: In light of the normal objective evaluation without evidence of dysfunction, there is no permanent partial disability which can be attributed to the helicopter accident of July 31, 1985.

\* \* \* \* \* \*

"WORK RESTRICTIONS: This patient may safely perform any and all work activities on a full time basis without restrictions. Certain activities, such as heavy lifting or frequent bending and twisting of the neck and upper back, may be associated with transient increases in symptoms, but are entirely safe for this individual. A return to a more normal activity schedule is not only safe for this individual, but should be strongly encouraged since it has been documented to have significant therapeutic potential as well, and this includes a return to employment activity as soon as possible."

The Bureau accepted Dr. Ketroser's medical report and rejected Dr. Adams' opinion, as well as the testimony of lay witnesses testifying on DeChandt's behalf. The Bureau relied on audiotapes, videotapes and observations made of DeChandt by Phil Koch, a private investigator, whose investigation was conducted upon Ward County's request "that surreptitious surveillance be made of Mr. Robert DeChandt showing him at work, in a working situation so as to his mobility, range of motion, things like that."

Koch produced a videotape of DeChandt welding at Porter Brothers on August 21, 1987; a videotape of DeChandt welding a standpipe for a satellite TV system on October 20, 1987; and a videotape of DeChandt cutting up some old farm equipment and loading the pieces on a flatbed on December 5, 1987. Koch also produced an audiotape of telephone conversations in which DeChandt said, "the next ten days I'm going to be pretty busy here" and "I've got a couple of engines that I'm working on right here in the shop that I've got to get out." Koch testified that he spoke with DeChandt as DeChandt was leaving the Standard Truckstop about noon the day after the Porter Brothers welding job and that DeChandt did not "exhibit any mannerisms of any sort that would show you that he was feeling adverse effects from the previous day's labors." Koch testified that he observed DeChandt get out of his car and walk to his garage the evening of the day after the equipment-cutting job and that he did not "observe any disabilities on the part of Mr. DeChandt in relation to getting out of the car, walking, anything of that nature."

DeChandt testified that the Porter Brothers welding job was "extremely easy" and involved "no physical labor to speak of at all." He testified that welding the standpipe on the satellite TV system took about "20 minutes of actual work" and was painful because it required that he climb a ladder and that he "had some pretty good discomfort" that evening and the next day. DeChandt testified that on the equipment-cutting job the most he lifted that day were pieces of angle iron weighing no more than 10 pounds and a piece of tin weighing about 5 pounds.[3] DeChandt testified that he was sore after that job, that his son, who helped him on that job, drove him home that night because his arms were aching, and that he did nothing involving manual labor the next day because "I just didn't feel good." About the engines he referred to in the audiotape, DeChandt testified that his son and a friend replaced the engine in his car because he "had to have a car for transportation" for "an appointment with a doctor in Fargo for Workmen's Compensation."

The evidence relied on by the Bureau is similar to that found to be insufficient by the court in *Carson v. Gaineswood Condominiums,* 532 So.2d 28 (Fla.App.1988). In that case, a worker was awarded benefits for a back injury. Later, the employer and

---

3. The weights were stipulated to, based upon samples introduced at the hearing.

carrier sought to stop benefits on the ground that the claimant had no impairment or disability beyond that for which compensation had already been paid. One doctor reported that the claimant was "totally and permanently disabled." *Id.*, at 30. The claimant's orthopedic surgeon stated that the "claimant's back problems were the type that would have him feeling totally disabled one day, and reasonably well on another day" and rated his disability at 25%. *Id.*, at 30. A third doctor "explained that claimant could function fairly well some days, and on other days he could be confined to bed due to a flareup" and that the claimant "is forced to lead a sedentary existence." *Id.*, at 30.

A private investigator introduced videotapes of his surveillance of the claimant. The tapes depicted the claimant engaging in a variety of activities "with no discernible difficulty." *Carson v. Gaineswood Condominiums, supra*, at 31. On the basis of those tapes, the deputy commissioner "expressly rejected expert medical opinion that claimant was permanently and totally disabled." *Id.*, at 32. The Florida appeals court said of the tapes, at page 33:

> "Moreover, the activities claimant is shown performing on the surveillance tapes are generally consistent with his testimony and that of the medical experts regarding his impairment.... Although the surveillance tapes show claimant performing a variety of activities, none of the activities depicted are strenuous or inconsistent with the limitations expressed by the treating physicians."

The court concluded that the deputy's order failed "to set forth sufficient reasons for rejecting unrefuted medical testimony on what is essentially a medical question." *Id.*, at 33.

In our view, the Bureau's reliance on the audiotapes, videotapes, and observations made by Ward County's private investigator in his surreptitious surveillance of DeChandt does not adequately explain its reasons for disregarding the medical evidence in favor of DeChandt presented by Dr. Adams upon examining DeChandt more than 40 times. The evidence presented by the investigator is not inconsistent with the testimony presented by DeChandt, Dr. Adams, and the lay witnesses testifying on DeChandt's behalf. The finding that DeChandt was "capable of performing any and all work activities" is therefore, not supported by a preponderance of the evidence, and the Bureau's conclusions that DeChandt failed to prove that he remains disabled and failed to prove he is entitled to further benefits are not supported by the findings of fact.

At oral argument, counsel for the Bureau contended that the Bureau's decision could be upheld on the ground that, because of his varied work history, DeChandt was capable of working. A claimant who is capable of engaging in "many employment-related activities" may not be disabled. *Olson v. North Dakota Workers Compensation Bureau*, 419 N.W.2d 894, 897 (N.D.1988); *Jimison v. North Dakota Workmen's Compensation Bureau*, 331 N.W.2d 822, 827 (N.D.1983). Because of its conclusion that DeChandt failed to prove that he remains disabled, the Bureau made no findings in this regard and we are unable to sustain the Bureau's decision on the basis of counsel's assessment of DeChandt's work history and abilities.

The judgment is reversed and we remand to the Bureau with directions to consider the ability of DeChandt to perform other work for which he is qualified or, in the absence of a finding that he is able to perform other work, to continue DeChandt's benefits.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.