482 So.2d 472 (1986)
Manuel LEMUS, Appellant,
v.
INDUSTRIAL SITES SERVICES & Argonaut Insurance Co., Appellees.
No. BE-128.
District Court of Appeal of Florida, First District.
January 20, 1986.
Vicki L. Stolberg, of Barrs, Williamson & Levens, Tampa, for appellant.
E. Robert Williams, Karen K. Cole, of Boyd, Jenerette, Staas, Joos, Williams & Felton, Jacksonville, for appellees.
*473 WENTWORTH, Judge.
Claimant seeks review of a December 13, 1984, workers' compensation order which awarded permanent total disability benefits from March 1, 1984 (MMI) at 40% of claimant's compensation rate based on a finding that 60% of his disability pre-existed his September 1981 industrial accident. On both points raised by appellant, (1) error in allowing a 60% apportionment defense and (2) error in omitting award of benefits for four months preceding January 1984, we reverse and remand the order appealed.
The appellant claimant was injured in 1981 in a fall in his employment as a construction laborer, while he was cleaning a floor. He was then age 42, illiterate, and had worked all his life in similar employment. He was ultimately rated by his treating surgeon as 10% orthopedically impaired as a result of his injury, and by a psychiatrist, Dr. Sprehe, as 100% disabled resulting from "probably at least sixty percent (60%) pre-existing intellectual impairment." Dr. Sprehe said he had been "operating at a very borderline level of functioning, and then had [the compensable] concussion with further diminution of his intellectual functioning."
The deputy found claimant had "a severe intellectual and learning handicap ... manifesting at the time of the ... accident." The order reads in pertinent part:
I ... accept the opinion of Dr... . Sprehe, and find, therefore ... that the employee's disability is 40% attributable to his industrial accident and therefore the employee's compensation rate shall be reduced by 60%, which is the percentage of disability which pre-existed the employee's industrial accident and is contributing to the employee's disability at this time... . WHEREFORE, it is ORDERED ... that ... carrier pay... permanent total disability benefits at forty percent (40%) of the employee's compensation rate commencing March 1, 1984. (e.s.)
The order thus awards benefits based on permanent total disability, and the appellee carrier does not on this appeal controvert the determination of permanent total disability. That determination, under § 440.02(7)(b), (9), Florida Statutes, establishes that claimant is totally incapacitated "to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." Since the fact of permanent total disability is uncontroverted we must also assume, although the order does not so recite, that the deputy properly considered all of the factors required in addition to claimant's impairment, i.e., "age, industrial history, training and education, motivation, work experience, work record, diligence and the like." Regency Inn v. Johnson, 422 So.2d 870, 877, note 5 (Fla. 1st DCA 1982); H.S. Camp & Sons v. Flynn, 450 So.2d 577, 580, note 3 (Fla. 1st DCA 1984). Although the award in this case is based upon the medical evidence of total psychiatric impairment, it clearly is not an award for total permanent impairment because § 440.15(3)(a), Florida Statutes, limits impairment awards to other defined losses not including total physical or psychiatric impairment. It is equally clear (even assuming that the apportionment defense applies to permanent total disability awards under Chapter 440 as now amended) that the deputy's reference to the "60% ... disability which pre-existed the ... accident" is based expressly on medical evidence of pre-existing impairment, i.e., Dr. Sprehe's opinion as to a pre-existing 60% "intellectual handicap." The deputy's acceptance of that evidence therefore does not support the equivalent or pro tanto diminution of the permanent total disability award because the degree of impairment is only one element of proof underlying such an award, and the rated impairment has no arithmetical relation to the degree of disability as that term is defined in our statute.
We therefore find, again assuming apportionability of PTD benefits under the current statute, that reversal of the apportioned award is necessary because the order does not find and the record does not show what part, if any, of claimant's PTD *474 was caused by the pre-existing 60% intellectual impairment.[1] Instead, claimant's prior impairment was apparently compatible with his lifetime employment history, and employer/carrier presented no evidence that the prior impairment, independent of the accident, was likely to be a hindrance or obstacle to the employment on which his average weekly wage and compensation rate are based.
In defense of the order reducing claimant's compensation rate by 60%, appellee relies on Escambia County Council on Aging v. Goldsmith, 465 So.2d 655 (Fla. 1st DCA 1985). That decision reversed a PTD award because a part of claimant's 20% leg impairment was noncompensable, and directed the deputy:
... to apportion out of the permanent total disability award that percentage of the award for permanent impairment caused by ... preexisting conditions. (e.s.) 465 So.2d 658.
Because the order there reviewed did not make any "award for permanent impairment," being instead an award for permanent total disability based in part on impairment, the concluding language may most reasonably be read as requiring apportionment of that part of the PTD award which, on remand, might be found attributable to pre-existing impairment. We are unable on the basis of the opinion to determine what method of attribution was intended, and we note that the order entered on remand is now pending review here.[2] Other than that ambiguous directive we are referred to no logic or authority for subtracting a noncompensable impairment percentage directly from a PTD award. There is, of course, support in both reason and law for the principle that a noncompensable pre-existing impairment supports apportionment only to the extent that it independently contributes to an award of compensation. Quite aside from complex merger arguments, that result follows from the basic statutory definition of compensable disability as all "incapacity because of the injury to earn ... the wages which the employee was receiving at the time of the injury." § 440.02(7)(b), (9).
Primary among the numerous interrelated statutory provisions considered in Goldsmith was the following 1979 revision of § 440.02(18), Florida Statutes, as to pre-existing conditions:
... only ... aggravation of the pre-existing condition reasonably attributable to the accident shall be compensable, with respect to death or permanent impairment. (e.s.)
The provision formerly read:
... only ... aggravation of disability reasonably attributable to the accident shall be compensable.
The Goldsmith opinion states the amendment changed "the basis for apportioning permanent benefits [to] ... aggravation of permanent impairment rather than ... aggravation of disability." (e.s.) Whatever the language of the amendment (or the opinion) may mean, and without impinging the actual decision in the case to "apportion out" of the PTD award "that percentage" caused by noncompensable impairment (assuming the causal relation to PTD did exist in that, but for the unrelated percentage of impairment, claimant would not have been PTD), we are unable to follow the further indication in Goldsmith that the statute alters the Supreme Court decision in Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967), which clarified the *475 principle that the apportionment defense should diminish a permanent total disability award only to the extent of "that portion of the disability which resulted from the pre-existing" condition independent of the compensable injury.
Goldsmith also references numerous opinions of this court applying the Evans principle as "all decided under the pre-1979 Florida Statutes." 465 So.2d 655, 658. In at least one instance, however, the decision related to an accident which the record[3] reflects occurred in 1981, and the opinion expressly affirms denial of apportionment on an alternative basis that, even assuming claimant had a pre-existing impairment "there was no evidence that it was disabling prior to the compensable" accident. Willard Kaufman Co. v. Rawlings, 414 So.2d 641 (Fla. 1st DCA 1982).
We conclude that certification of the critical issue as to Evans' continued viability is indispensable to a coherent disposition of the present case by the deputy on remand. We also conclude that the deputy patently erred in failing to consider the claim for temporary disability benefits for October 1983 through January 1984, in view of the March 1, 1984 maximum medical improvement date fixed by the order.
The order appealed should in our opinion be reversed and the cause remanded for reconsideration of the claim and the apportionment defense and for entry of a new order consistent herewith, based on the existing record or such additional evidence as the deputy may consider proper. Our determination of the appeal, however, depends in part upon the continued applicability of the rationale stated in Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967), subsequent to the statutory amendments detailed in Goldsmith. We therefore certify as a question of great public importance,[4] by reason of the numerous pending claims affected thereby, as follows:
Did the 1979 amendments to Chapter 440, Florida Statutes, cited in Escambia County Council on Aging v. Goldsmith, 465 So.2d 655 (Fla. 1st DCA 1985), render inapplicable the decision in Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967), that "apportionment is proper only when and to the extent that the pre-existing disease either, (1) was disabling at the time of the accident and continued to be so at the time the award is made or (2) was producing no disability at the time of the accident but through its normal progress is doing so at the time permanent disability is determined and an award is made"?
The order appealed is accordingly reversed.
SHIVERS and WIGGINTON, JJ., concur.
NOTES
[1] The parties do not analyze the issues in terms of merger principles, and we leave such issues, if applicable, for consideration by the deputy on remand. The statute, however, classifies a claimant's mental retardation as a pre-existing condition for merger purposes under certain circumstances. § 440.49(2)(f)1.v, Florida Statutes (1981).
[2] The order entered in Goldsmith on remand is now pending before this court in an appeal filed August 30, 1985, Escambia County Council on Aging, et al. v. Goldsmith, Case No. BI-237. See also, as to apportionment issues different from those in Goldsmith, the decision in Flagship National Bank, et al. v. Hinkle, et al., 479 So.2d 828 (Fla. 1st DCA 1985), stating "we hold that the 1979 amendments transferring the statutory language prohibiting apportionment from section 440.02(18) to section 440.15(5) did not alter the prior substantive law... ."
[3] Department of Legal Affairs v. District Court of Appeal, 5th District, 434 So.2d 310, 313 (Fla. 1983).
[4] Fla.R.App.P. 9.030(a)(2)(A)(v). We find the certification mechanism, as opposed to en banc consideration for "exceptional importance," Fla. R.App.P. 9.331(a), to be dictated by the fact that the limited point in issue is the continuing validity of the Supreme Court opinion in Evans, as opposed to the actual decision of this court in Goldsmith.