497 So.2d 958 (1986)
WILHOIT INTERNATIONAL and Aetna Life & Casualty Company, Appellants,
v.
John TIDWELL, Appellee.
No. BK-424.
District Court of Appeal of Florida, First District.
November 17, 1986.
*959 Daniel DeCiccio of DeCiccio & Broussard, Orlando, for appellants.
Edward Hurt, Sr. of Hurt, Parrish & Dalton, P.A., Orlando, and Bill McCabe of Shepherd, McCabe & Cooley, Orlando, for appellee.
MILLS, Judge.
Wilhoit International and Aetna Life & Casualty Co. (E/C) appeal from an order of the deputy commissioner (D/C) awarding Tidwell permanent total disability (PTD) benefits and an attorney's fee pursuant to Section 440.34(2)(c), Florida Statutes (1979). We affirm in part and reverse in part.
In October 1979, while employed by the E/C as a welder, Tidwell struck his lower back on a steel beam. He sought treatment in June 1980 from Dr. Ortiz, an orthopedic surgeon, who has continued to treat him. Ortiz found that the industrial accident had aggravated the pre-existing asymptomatic condition of spondylolisthesis and that, as a result, Tidwell had a 20% permanent impairment to his body as a whole. Therefore, Tidwell was restricted from continuous sitting and/or walking for more than 30 minutes at a time, from lifting more than 10 pounds and from bending, squatting, crawling or overhead reaching. Ortiz opined that Tidwell could not do even light work uninterruptedly and that rehabilitation was not recommended based on the length of time he had been out of work, his advanced age (66 years) and his physical problems.
Dr. Stanford is also an orthopedic surgeon, who examined Tidwell once at the *960 behest of the E/C. It was his opinion that Tidwell was capable of light work and that, while he suffered 22% permanent impairment to the body as a whole, he would be 20% permanently impaired because of the pre-existing spondylolisthesis in the absence of any industrial injury. Stanford conceded that the pre-existing condition had been asymptomatic before the injury and had not affected Tidwell's ability to perform his job.
In an attempt by the E/C at rehabilitation, Tidwell was interviewed in February 1982 by Jack Thomas, a rehabilitation coordinator. However, Thomas questioned "the suitability of these services at the present time" due to some possibility of surgery and no further efforts at rehabilitation were undertaken by the E/C until February 1985. At that time, counselor Suzanne Funk was assigned Tidwell's case, but in May 1985, it was mutually agreed between Funk and the E/C, with no input from Tidwell or his attorney, that no more rehabilitation would be done at that time; it was "put on hold."
Tidwell authorized the recommencing of rehabilitative efforts in August 1985, but scheduling difficulties prevented any meetings with the assigned counselor. As a result of these difficulties, the E/C filed a "motion for vocational testing," alleging in part that because Tidwell was by that time seeking permanent total disability benefits, "the E/C is justified in establishing testimony which would indicate whether or not claimant is capable of performing any other jobs within his physical limitations and restrictions." The motion was denied after hearing.
The E/C thereupon authorized Tom Ireland, a rehabilitation counselor, to conduct an independent telephone job search, advising Ireland by letter to use Dr. Stanford's deposition and medical reports in establishing Tidwell's restrictions. Using these items, Ireland located three jobs which the respective employers opined someone with Tidwell's restrictions could do. Ireland conceded that he had had no access to Dr. Ortiz' opinions regarding Tidwell's restrictions and that, although he knew of Ortiz' opinion that Tidwell could not do light work, he did not mention that to the prospective employers.
In December 1985, the D/C entered his order granting Tidwell's request for PTD benefits, based on his acceptance of Ortiz' opinion that Tidwell could not do even light work uninterruptedly. With regard to rehabilitation, the D/C found that counseling had been provided for the first time in 1985 and that the counselor had been instructed to cease her efforts by the E/C itself; the August 1985 efforts were found to be for the sole purpose of creating a defense to Tidwell's PTD claim.
The E/C had contended at the hearing that 90% of the permanent benefits sought by Tidwell should be apportioned out, based on Dr. Stanford's testimony that Tidwell would be 20% permanently impaired from the pre-existing condition absent any industrial injury, after which he was 22% permanently impaired. The D/C rejected this argument, finding no evidence either of impairment before the accident or of natural progression of the pre-existing condition. Based on the apportionment defense, the D/C awarded Tidwell an attorney's fee pursuant to Section 440.34(2)(c), Florida Statutes (1979) (awardable when the E/C denies that an injury occurred for which compensation benefits are payable, and the claimant prevails on compensability).
The E/C contends first that the award of PTD was erroneous in that there was medical testimony that Tidwell could do light work. However, Dr. Ortiz, Tidwell's treating physician since the time of the injury, testified that he was unable to do even light work uninterruptedly and it was within the D/C's discretion to accept this testimony over Dr. Stanford's to the contrary. See McCandless v. M.M. Parrish Construction, 449 So.2d 830, 833 (Fla. 1st DCA 1984).
Further, the E/C argues that the D/C improperly awarded PTD benefits without first making a finding that Tidwell could not be rehabilitated, contrary to the *961 requirements of Section 440.49(1)(c), Florida Statutes (1979). This argument was addressed in H.S. Camp & Sons v. Flynn, 450 So.2d 577 (Fla. 1st DCA 1984), where the court affirmed based on the "lack of any evidence that the rehabilitation services provided ... could produce results sufficient to defer the permanent total disability determination." Camp at 579. In this case, the E/C made two desultory attempts at providing rehabilitation, first in 1982 and not again until 1985, both of which the E/C abandoned with no indication of a lack of cooperation by Tidwell. Further, there was medical testimony that rehabilitation was impractical given Tidwell's long unemployment, his age and physical restrictions. Because there was no evidence that the rehabilitation services provided by the E/C could have deferred the PTD determination herein, we affirm on this issue.
As regards persons who cannot do even light work uninterruptedly, it is incumbent upon the employer to show that suitable work is available, and if the employer fails to meet that burden, the D/C should hold that the injured worker is PTD. Loprinzo v. Mald Corp. 429 So.2d 1363, 1365 n. 1 (Fla. 1st DCA 1983). The E/C contends that it demonstrated the availability of suitable work by the testimony that three jobs had been located within Tidwell's restrictions. However, in locating the positions relied on by the E/C, the rehabilitation counselor utilized, at the E/C's behest, only Dr. Stanford's restrictions on Tidwell. Further, although the counselor was aware of Dr. Ortiz' opinion that Tidwell could not do even light work uninterruptedly, he did not convey this information to the prospective employers whom he contacted. Therefore, we find that the E/C did not meet its burden with respect to showing the availability of suitable employment so as to defeat the PTD claim.
The E/C next contends that, even if the PTD award is correct, the D/C erred in failing to apportion that award pursuant to Escambia County Council on Aging v. Goldsmith, 465 So.2d 655 (Fla. 1st DCA 1985), which appeared to hold that the apportionment of permanent benefits based on a pre-existing condition does not require a showing by the E/C that the condition caused disability prior to the industrial accident, but merely impairment. However, this court in Lemus v. Industrial Sites Services, 482 So.2d 472 (Fla. 1st DCA 1986), held that Escambia County left intact the decision in Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967), which "clarified the principle that the apportionment defense should diminish a permanent total disability award only to the extent of that portion of the disability which resulted from the pre-existing condition independent of the compensable injury." Lemus at 474-75 (emphasis in original). In this case, it is undisputed that Tidwell's pre-existing condition of spondylolisthesis was totally asymptomatic before the industrial accident and that it in no way hindered his performance as an iron worker. Neither was there any evidence of natural progression of the condition at the time of the hearing. Therefore, the D/C was correct in his rejection of the apportionment defense herein.
However, we must reverse the award below of attorney's fees pursuant to Section 440.34(2)(c), Florida Statutes (1979). In Dolphin Tire Co. v. Ellison, 402 So.2d 36 (Fla. 1st DCA 1981), the E/C stipulated that the claimant's injury was compensable, but denied that it was "catastrophic." The D/C determined that the injury was catastrophic and awarded an attorney's fee pursuant to Section 440.34(2)(c). This court affirmed, but was careful to point out that a fee is not authorized thereunder where the E/C does not deny that an injury occurred for which benefits are payable and the claimant is not forced to prove injury.
The court has indicated a willingness to permit a fee pursuant to (2)(c) or its equivalent when the E/C accepts compensability for certain injuries but denies it for other distinct injuries, see Hillsborough Co. School Board v. Hilburn, 472 So.2d 1309 (Fla. 1st DCA 1985), but not when additional benefits are refused on account of one compensable injury. See Four Quarters *962 Habitat, Inc. v. Miller, 405 So.2d 475 (Fla. 1st DCA 1981); E.C. Goldman Roofing v. Rogers, 418 So.2d 426 (Fla. 1st DCA 1982); West Florida Hospital v. Washington, 418 So.2d 1134 (Fla. 1st DCA 1982); Hillsborough Co. School Board, supra.
Here, the E/C accepted Tidwell's back injury as compensable and paid him temporary benefits for four years; it simply denied his claim for further benefits based on that original compensable injury. Therefore, the D/C erred in awarding a fee based on 440.34(2)(c), Florida Statutes (1979), and that portion of the order below is reversed.
Affirmed in part and reversed in part.
BOOTH, C.J., and WENTWORTH, J., concur.