NIMMONS, Judge.
The employer and its carrier appeal from a final order awarding claimant permanent total disability (PTD) benefits and denying their claim for apportionment. We affirm.
On July 20, 1980, the claimant sustained an on-the-job injury when a forklift he was driving blew a tire causing him to be thrown over the front of the hood. He sustained significant injuries to his head, neck, back, arms, and right leg.
Following the accident, claimant was paid temporary total disability and medical benefits. Claimant also received wage loss for approximately two years. In March 1988, claimant filed a claim for PTD benefits and remedial care and treatment. A final hearing was held on the claim on September 1, 1988.
At the hearing, Dr. Daniel Sprehe, a psychiatrist, testified that he began seeing the claimant in March of 1985 for depression. After evaluation and testing Dr. Sprehe diagnosed the claimant as suffering from reactive depression, secondary to the injuries sustained in the accident of July 20, 1980. At this time, Dr. Sprehe felt that the claimant was temporarily totally disabled due to a combination of his injuries and his psychiatric condition. It was Dr. Sprehe’s opinion that claimant had reached MMI from a psychiatric standpoint on January 22, 1988. At that time, the psychiatrist felt that claimant was 100% disabled and attributed the following to his condition: 30% low I.Q., 20% pain syndrome from the July 20, 1980 accident, 40% pre-existing injuries,[1] and 10% conscious lack of motivation. At the time of the hearing in September 1988, the doctor modified his opinion by stating that the 10% figure was related to certain “social stresses.”[2] It was Dr. Sprehe’s opinion at that time that the *1332 claimant was permanently and totally disabled and was unable to engage in gainful employment. It was further Dr. Sprehe’s opinion that the claimant would continue to need psychiatric follow-up visits and treatment.
The defense raised by the employer/carrier was that the claimant was not PTD, but if claimant was in fact found to be PTD, the employer/carrier were entitled to apportionment. In his final order, the JCC found that the claimant was permanently and totally disabled, and denied the employer/carrier’s claim for apportionment on the basis that “there [was] no proof ... that the claimant suffered a disability within the meaning of the law of Florida nor [was] there any evidence that the preexisting condition by its natural progression would have caused disability by the time of this hearing.”
We find that the JCC’s award of PTD is supported by competent substantial evidence. We also find that under the facts before him, the JCC properly denied the employer/carrier’s claim for apportionment. The balance of our opinion will discuss only the apportionment issue.
Section 440.02(18), Florida Statutes (1980), provides in relevant part:
Where a preexisting disease or anomaly is accelerated or aggravated by an accident arising out of and in the course of employment, only acceleration of death or acceleration or aggravation of the preexisting condition reasonably attributable to the accident shall be compensa-ble, with respect to death or permanent impairment.
In Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla.1967), the Florida Supreme Court's landmark decision on apportionment of permanent disability benefits under the Florida Workers’ Compensation Act, the court held with respect to the predecessor to the above statutory provision [3]:
This language is unambiguous. It means that in cases in which a pre-exist-ing disease is aggravated by industrial injury, the resulting disability, determined as of the time of the award, is to be considered as falling into three categories: (1) that which resulted directly and solely from the accident and which would have occurred even in the absence of the pre-existing disease; (2) that which resulted from the acceleration or aggravation of the pre-existing disease by the accident; and (3) that which resulted from the normal progress of the disease and would have existed had the accident never occurred. Disability falling within the first two categories is compensable under the terms of the statute. It is the purpose of See. 440.02(19) to relieve the employer of disability within the third category by apportioning it out of an award. We so hold.
[[Image here]]
As stated above, apportionment is proper only when and to the extent that the pre-existing disease either (1) was disabling at the time of the accident and continued to be so at the time the award is made or (2) was producing no disability at the time of the accident but through its normal progress is doing so at the time permanent disability is determined and an award is made.
196 So.2d at 752-753. See also Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986); Javier v. Goldcoast, Inc., 501 So.2d 61 (Fla. 1st DCA 1987).
*1333 In determining whether and to what extent apportionment should be made, it is necessary to determine the degree or extent of disability falling within the three categories as stated above and to apportion out of an award only that portion of the disability attributable in fact to the normal progress of the preexisting disease which would have occurred had the aggravating accident never occurred. Evans, 196 So.2d at 754. As recognized by the court in Evans:
The effect of this opinion is simply to hold that apportionment under Sec. 440.-02(19) is proper only when and to the extent that a pre-existing disease produces disability independently of the accelerating or aggravating effect of an industrial accident.

Id.

The Evans’ decision is based on the underlying premise that the employer takes the employee as he finds him, in that the employee is not charged with diseased or weakened conditions which were not and would not have been disabling without the accident. On the other hand, the employer is relieved of the burden of paying for disability which occurred through the normal progress of the disease and was unrelated to the accident.
Furthermore, “disability” has been consistently defined as “incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.” § 440.02(9), Fla.Stat. (1980). Accordingly, an employee who has been suffering from a prior condition which has not disabled him from performing gainful employment may recover benefits for a subsequent injury due to a compensable accident despite the presence of such preexisting condition. Lemus v. Industrial Sites Services, 482 So.2d 472 (Fla. 1st DCA 1986); Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986).
The employer/carrier argue on this appeal that while there is competent substantial evidence to indicate that claimant’s preexisting injuries were not disabling at the time of the accident, the record does indicate that the normal progression of the preexisting injuries was such as to cause a certain degree of disability at the time of the final hearing. In support of their argument, the employer/carrier rely on Dr. Sprehe’s testimony. Dr. Sprehe assigned 40% of claimant’s 100% permanent total disability rating to the claimant’s preexisting injuries. Dr. Sprehe classified these injuries as chronic injuries which could worsen over time. Dr. Sprehe made it clear that the preexisting injuries had progressed over the eight-year period and had indeed produced a disability:
Q. What about this other 40 percent due to pre-existing injuries, what do you mean by that?
A. Well, he had a lot of pre-existing problems. The reason I attributed 40 percent is that he had a lot of—with the plane wreck and the motorcycle wreck he had a lot of orthopedic problems that left him with some residual pain syndrome that he was coping with while he was working, but it adds to his coping problems with everything else that he has now.
Q. Those types of injuries were also deteriorating type of injuries, were they not?
A. I’m not sure without looking at the records, but I think so. They were chronic.
Q. Yes, sir. And they would also more likely than not probably worsen over the years?
A. Probably.
Whether permanent total disability due in part to a preexisting condition meets the requirements in Evans and must be apportioned is a factual issue to be determined by the JCC. Escambia County Council on Aging v. Goldsmith, 500 So.2d at 635. Dr. Sprehe’s testimony that a substantial portion (40%) of the cause of claimant’s present psychiatric disability was due to pain attributable to claimant’s prior inju *1334 ries does not necessarily establish that this pain had a disabling psychiatric effect that operated independently of the accelerating or aggravating effect of the compensable accident. This was purely a question of fact to be decided by the judge below. The judge in the present case was entitled to find that there was no evidence before him establishing that claimant’s preexisting injuries were, independent of the aggravation caused by the compensable accident, disabling the claimant from engaging in gainful employment. Dr. Sprehe never testified that claimant’s prior conditions, through their normal progress, affected his ability to work independent of the industrial accident at the time of the hearing. In fact, that portion of Dr. Sprehe’s testimony relied upon by the employer/carrier can reasonably be interpreted as suggesting that the claimant’s preexisting condition would not have been disabling without the accident. Moreover, Dr. Sprehe even testified that the industrial accident was the principal cause behind the claimant’s current inability to work:
Q. Dr. Sprehe, do you have an opinion, assuming that this — that Mr. Baggett had had no new accident after 1980, whether he would still be working today if this accident in 1980 had not occurred?
A. Yeah. I have an opinion about that.
Q. What is your opinion?
A. I think he probably wouldn’t except for this accident — I mean the accident caused him to not be working today, if the principal thing, and the deterioration after that.
Accordingly, the judge’s award of PTD benefits and denial of the employer/carrier’s claim for apportionment are supported by competent substantial evidence in the record and hereby AFFIRMED.
WENTWORTH and ZEHMER, JJ., concur.

. As to his prior medical history, the claimant testified that he had been involved in two accidents prior to his July 20, 1980 accident. The first was in 1971 or 1972 and involved a motorcycle accident in which claimant "broke his back.” He missed about 1 ½ years of work and then returned to his trade as a heavy equipment operator.
Approximately four or five years later he was involved in an airplane accident in which he once again “broke his back.” Claimant testified that the x-rays revealed a hairline crack. Following the airplane accident, the claimant missed about six months of work. He then worked steadily in his trade until his accident of July 20, 1980.

. According to Dr. Sprehe, after January 1988, the claimant had undergone various "social stresses." Dr. Sprehe testified that the claimant’s son had been arrested for kidnapping and was subsequently sent to jail for 25 years. Also, the claimant’s dog was shot by the police and claimant was subsequently arrested after an al *1332 tercation with the police regarding the shooting. Finally, the claimant had been accused of sexual molestation of his girlfriend’s child and, as of September 1988, was awaiting further disposition of the criminal charges against him.

. Section 440.02(19), Florida Statutes (1961), the provision addressed in Evans, provided as follows:
Where a preexisting disease is accelerated or aggravated by accident arising out of and in the course of the employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable.