605 So.2d 134 (1992)
GRAND BAY HOTEL and American Mutual Insurance Company, now represented by Florida Insurance Guaranty Association, a nonprofit Florida corporation, Appellants,
v.
Nerida GUERRA and Home Insurance Company, Appellees.
No. 91-1397.
District Court of Appeal of Florida, First District.
August 28, 1992.
Rehearing Denied October 20, 1992.
Edward W. Levine of Marlow, Connell, Valerius, Abrams, Lowe & Adler, Miami, for appellants.
Andrew L. Richard, Jr. of Richard and Richard, Miami, for appellee, Home Ins. Co.
Henry E. Fierro and Jay M. Levy of Miami, for appellee, Nerida Guerra.
WOLF, Judge.
This is an appeal from a final order of the judge of compensation claims (JCC) which provided that the appellant, Florida Insurance Guaranty Association (FIGA), reimburse the subsequent compensation carrier (Home Insurance Company or Home) for a portion of a washout settlement between Home, the employer, and the *135 claimant as well as requiring FIGA to pay 50 percent of all future disability benefits payable to the claimant. The future payments were to be made without credit for amounts paid as part of the settlement reimbursement. All the parties agree that the order issued by the JCC is internally inconsistent and that the case must be reversed. The parties disagree however, concerning which portion of the JCC's order must be reversed. We reverse the entire order and remand for further proceedings and findings concerning the intended scope of the settlement agreement entered into between the claimant and Home Insurance Company.
The claimant worked as a maid for Grand Bay Hotel until the end of May 1985 when she injured her left knee in a compensable accident (accident one). She was off work for three or four weeks, received medical treatment, and was able to return to her job duties with the assistance of coworkers. Early in January 1986, the claimant again sustained a compensable injury (accident two). The claimant slipped and fell, injuring her back, wrist, and hand. As a result of accident one, claimant came under the care and treatment of Dr. Patrick J. Barry, who performed arthroscopic surgery. As a result of accident two, the claimant came under the care and treatment of Dr. Alexander Angelides. Dr. Angelides treated the claimant, and eventually performed corrective surgery on the claimant's wrist and hand in mid January 1988. Dr. Paul Daruna, a psychiatrist, saw the claimant on one occasion. The claimant came under the care and treatment of Dr. Bernardo Garcia-Granda, another psychiatrist, who diagnosed the claimant with an adjustment disorder, with anxious mood and depression. The doctor believed that the claimant's psychiatric problems were caused by the cumulative effects of accidents one and two.
The Home Insurance Company, the second carrier, entered into a lump-sum settlement with the claimant on April 12, 1990. The stipulation, in pertinent part, provided as follows:
10. After thoroughly investigating all aspects of this claim, and upon recognition of all parties that it would be to the best interests of the claimant, in order to avoid any undue expense or undue hardship, that the claimant's claim for compensation and rehabilitation (not medical) benefits be disposed of by a lump sum settlement, the parties have agreed that a settlement by:
Payment to the claimant of the sum of $120,000.00 out of which the claimant shall pay her attorney a reasonable attorney's fee in the amount of $35,000.00 and costs in the amount of $5,000.00
should be consummated upon the clear understanding that said settlement would fully release and forever discharge the employer and carrier, THE HOME INSURANCE COMPANY, from any and all claims for further compensation and rehabilitation (not medical) benefits.
11. The employer, GRAND BAY HOTEL, has been apprised of this settlement and has no objection to same.
12. The claimant has executed an Affidavit fully setting forth that she has had explained to her her rights under the Florida Workers' Compensation Act, which is attached hereto and made a part of this Stipulation and Joint Petition by reference.
WHEREFORE, the parties jointly petition the Judge of Compensation Claims to enter an Order adopting as findings of fact the matters hereinabove enumerated, and authorizing the employer, by and through its carrier, to pay a lump sum in the amount of $120,000.00 in full and final discharge of its responsibility to the claimant for compensation and rehabilitation (not medical) benefits out of which the claimant agrees to pay her attorney a reasonable attorney's fee in the amount of $35,000.00 and to reimburse her attorney the amount of $5,000.00 in costs. Said payment shall forever discharge any and all liability for compensation and rehabilitation (not medical) benefits under Sections 440.20(12)(a) and (c) and 440.28 of the Florida Statutes.
*136 Attached to the stipulation was the affidavit of the claimant which read as follows:
1. I am the claimant in the above-styled cause, Claim No.: 266 78 5540, date of accident 1/1/86.
2. I have had fully explained to me the "washout" settlement, and I am fully aware that, once an Order is entered approving the Joint Petition pursuant to Florida Statute 440.20(12)(a) and (c), which I have duly executed, I will be forever barred from receiving any further compensation and rehabilitation (not medical) as a result of my industrial accident on January 1st, 1986, arising out of and in the course of my employment with GRAND BAY HOTEL.
3. I am fully aware that I may be entitled to a hearing on my claim, if I so desire; and am aware of the fact, having had it explained to me by my attorney, that I could receive more, or I could receive less, as a result of a hearing. However, I desire to settle my claim in this fashion.
Further Affiant saith not.
The JCC entered an order approving the stipulated settlement on April 12, 1990.
The claimant continued to pursue a claim as a result of accident one against American Mutual Insurance Company and its successor, FIGA. The JCC, in an amended order of March 11, 1991, stated the position of the carrier's before the JCC:
Home Insurance appeared in this cause and asserted their prior settlement with the Claimant as their defense, and in addition, sought a claim against the Employer/F.I.G.A. pursuant to F.S. 440.42. American Mutual/F.I.G.A. asserted as their defense that the Claimant had no right to seek additional benefits from them because the Claimant had made a full recovery from her 5/31/85 accident and that the claimant's settlement with Home for her 1/1/86 accident acted to prevent the Claimant from receiving benefits from American Mutual/F.I.G.A.
In the March 11, 1991, final order, the JCC found that FIGA was responsible for 100 percent of the medical care for the wrist and back injuries, that each carrier was to pay for one-half of the ongoing and continuing emotional care for the claimant, and that the claimant was entitled to permanent and total disability benefits as of Dr. Garcia-Granda's MMI date, June 16, 1989, based on a combination of the accidents. The judge of compensation claims further ruled that Home's lump-sum washout discharged its obligation to pay one-half of the permanent total benefits due claimant. FIGA, however, was adjudicated to be responsible for the balance of said permanent total benefits. After this ruling, Home continued to seek reimbursement from FIGA. A final amendment to the order was issued on April 15, 1991, that "FIGA will reimburse Home Insurance Company 1/2 of all compensation benefits paid by Home Insurance Company per the settlement previously entered into between Home Insurance Company and the claimant and said reimbursement will be pursuant to F.S. 440.42." FIGA also was responsible to pay one-half of future PTD benefits.
The numerous amendments to the final order resulted in the following monetary effects on the parties: (1) Claimant would receive $120,000 as per the settlement with Home and would receive one-half permanent total benefits in the future from FIGA; (2) Home would receive 50 percent of the settlement ($60,000) in reimbursement from FIGA, and FIGA would also be required to pay one-half of the future permanent total benefits to claimant without the benefit of a setoff.
On appeal, FIGA asserts that the washout settlement should be determined to satisfy 100 percent of all permanent total disability benefits due to the claimant or that Home should not be entitled to reimbursement from FIGA. Home argues that the settlement should be interpreted to reflect 100 percent of the permanent disability amounts owed to the claimant and, thus, they are entitled to reimbursement. The claimant, appellee, asserts that Home should not be entitled to reimbursement since they only paid their share of the benefits owed to the claimant and did not *137 pay any amounts on behalf of FIGA.[1]
Essentially, this dispute involves an interpretation of the scope of the settlement between the claimant and Home. While construction of an agreement between the parties is generally a matter of law, where the terms of the written agreement are susceptible to more than one construction an issue of fact is presented. See Zarranz v. Coral Gables Hosp., Inc., 591 So.2d 323 (Fla. 3d DCA 1991). In such cases, the JCC, as the finder of fact, should make the initial determination concerning the intended extent of the settlement.
In the instant case, the terms of the settlement are unclear. The affidavit of the claimant which was attached to the stipulated settlement indicated that the release was only as to the second industrial accident. At the time of the settlement, claims were pending against both carriers, yet the settlement only included one carrier. These factors indicate that the settlement may not have been intended to encompass claimant's entire claim for permanent total disability benefits. The settlement, however, releases not only Home Insurance but also the employer, Grand Bay Hotel. In addition, there had been no apportionment prior to the settlement to indicate that Home was responsible for anything less than 100 percent of the permanent total disability benefits. Further, the settlement document specifically mentions a pending reimbursement claim against FIGA pursuant to section 440.42, Florida Statutes (a provision which only deals with responsibilities between carriers rather than responsibility as to the claimant), and does not address further pending claims on behalf of the claimant. These factors indicate that the settlement was intended to be a full settlement as to all PTD benefits.[2]
While the JCC's order of March 11, 1991, indicated that the settlement only reflected one-half of the claim and that FIGA was still responsible for one-half of the balance of the PTD benefits, the amendment to the amended order which requires FIGA to reimburse Home Insurance Company for one-half of all compensation benefits is inconsistent with this finding. If the settlement only reflects one-half of the PTD benefits due to the claimant, then Home only met its own obligations and was not entitled to reimbursement from FIGA pursuant to section 440.42, Florida Statutes.
We, therefore, reverse and remand to the JCC to determine the intent of the washout settlement and to grant only that relief which is consistent with this determination.
ZEHMER and BARFIELD, JJ., concur.
NOTES
[1] It is important to note what is not being challenged in this appeal and which, therefore, is not addressed by the court in this opinion. Appellant does not assert (1) that this case was not a proper case for apportionment of permanent total disability benefits pursuant to the standards enumerated in Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986), and Fegles Power Company v. Baggett, 560 So.2d 1330 (Fla. 1st DCA 1990); (2) that the 50 percent apportionment between carriers was inequitable; or (3) that the trial court did not have authority to consider a washout settlement as to one carrier prior to apportionment. We would also note that the cases of Structural Systems v. Worthen, 463 So.2d 502 (Fla. 1st DCA 1985), and City of Fernandina Beach v. School Bd. of Nassau County, 488 So.2d 871 (Fla. 1st DCA 1986), relied on by appellant, involve disputes concerning apportionment of compensation benefits due prior to MMI. Those benefits are specifically not apportionable as to a dispute between the carrier and employee pursuant to § 440.15(5), Fla. Stat., and, therefore, the court held that any release of a carrier by the claimant would necessarily constitute a 100 percent release. Based upon the types of benefits involved in this case and the matters which have not been raised on appeal, these cases are not controlling.
[2] The JCC should consider all these factors as well as comparing the present projected value of claimant's PTD claim against the actual amount of the settlement in making his determination concerning the scope of the settlement.